David CHIN, et al., Plaintiff,

v.

CHRYSLER CORPORATION, Defendant.

Civ.A. No. 95–5569 JCL.

United States District Court, D. New Jersey.

Sept. 11, 1998.

Allyn Zissel Lite, Goldstein, Lite & Depalma, Newark, NJ, Paul Linker, Gruhin & Gruhin, Nutely, NJ, Stanley Grossman, D. Brian Hufford, Pomerantz, Haudek, Block, Grossman & Gross, New York City, for Plaintiffs.

Thomas R. Curtin, Graham, Curtin & Sheridan, Morristown, NJ, Charles A. Newman, Diane M. Hoelzl, Bryan Cave, LLP, St. Louis, MO, for Defendant.

## OPINION

LIFLAND, District Judge.

Presently before the Court is Plaintiffs' motion for class certification pursuant to *Fed. R.Civ.P.* 23. For the reasons set forth below, Plaintiffs' have failed to meet the prerequisites for class certification under *Fed. R.Civ.P.* 23 and therefore the motion will be denied without prejudice.

### *BACKGROUND*

Plaintiffs' cause of action stems from an alleged defect in the anti-lock braking system ("ABS") in certain vehicles that were manufactured and distributed by Defendant Chrysler Corporation ("Chrysler") between the model years 1989 and 1993. Plaintiffs'

Third Amended Class Action Complaint (the "Complaint") ¶ 143. The ABS systems themselves, the Bendix 9 and 10 ABS, were manufactured by the Bendix division of the Allied Signal Corporation ("Allied"). Plaintiffs allege these systems are defective because they suffer from a leak in the master cylinder seal which causes a continuous bleeding of pressure, leading to an eventual failure of the ABS pump and power assisted braking. Compl. ¶ 2. Plaintiffs also assert that the ABS systems are defective because the hydraulic bladder accumulator is unable to store sufficient pressure, which may lead to the loss of both power-assisted and ABS braking ability. Compl. ¶ 170.

> Plaintiffs seek to certify a class of
>
> [a]ll persons or entities residing in the United States and Puerto Rico who (1) own or lease a vehicle sold or manufactured by Chrysler which is equipped with a Bendix 9 or 10 anti-lock brake system; or (2) have previously owned or leased such Defective Vehicles and have incurred expenses arising from the repair or replacement of defective Bendix 9 or 10 ABS systems.

Compl. ¶ 141. All personal injury or wrongful death claims are asserted in a separate action. While the exact number of potential class members is unknown at this time, from 1991 through 1993, Chrysler sold over 200,000 minivans with Bendix 10 ABS systems, and from 1990–1993 it sold an additional 68,000 New Yorker Salons or Fifth Avenues, Imperials, Premiers, Dynasties and Monacos with such systems. In addition, thousands more of the Jeep Cherokees were sold from 1989 through 1991 equipped with the Bendix 9 ABS systems. Compl. ¶ 143. The potential class of plaintiffs is made up of both people who have and have not suffered problems with their ABS systems. In the Complaint Plaintiffs allege that

> [t]o date, there have been over 2,000 complaints by consumers received by Chrysler, consumer advocacy groups or governmental agencies concerning defects in the Ben-

dix ABS, with at least 60 accidents reported ... Chrysler has also reportedly bought back at least 35 minivans from owners because of ABS failures.

Compl. ¶ 161. Therefore, since the number of Plaintiffs is in the hundreds of thousands, it is clear that the majority of Plaintiffs have not experienced the problems with their ABS systems that Plaintiffs allege are caused by a class-wide defect.

On October 27, 1995, Plaintiffs, on behalf of all owners or lessees of Chrysler automobiles equipped with the Bendix 9 or 10 anti-lock braking system, filed their original complaint with this Court. This was followed by the filing of an Amended Complaint on March 8, 1996, and a Second Amended Complaint on June 28, 1996. On July 26, 1996, Plaintiffs filed their motion for class certification. On April 17, 1998, Plaintiffs filed the present Complaint.

Plaintiffs allege in the Complaint that Chrysler sold automobiles with "dangerously defective ABS systems" in violation of the Magnusson Moss Act, 15 U.S.C. § 2301, *et seq.*,[1] and the applicable common law governing fraud[2] and breach of express and implied[3] warranties. Compl. ¶ 1. Plaintiffs seek to compel Chrysler to pay compensatory damages for the lost value of the vehicles, restitution of all costs incurred by Plaintiffs in connection with the purchase, replacement or repair of the Bendix ABS systems installed in the allegedly defective vehicles by Chrysler and punitive damages. Compl. ¶ 9. Plaintiffs also request injunctive relief[4] requiring Chrysler to either offer rescission to Plaintiffs by repurchasing their vehicles for their full cost or to recall all allegedly defective vehicles that were equipped with the Bendix ABS system and retrofit such vehicles with a non-defective braking system. Compl. ¶ 240.

In March 1994, the National Highway Traffic Safety Administration ("NHTSA"), pursuant to the federal Motor Vehicle Safety Act (the "act"), 49 U.S.C. § 30101, *et seq.*, initiated a Preliminary Evaluation of the

---

1. First Claim for Relief, Compl., ¶¶ 231–237.

2. Third Claim for Relief, Compl. ¶¶ 241–247.

3. Fifth Claim for Relief, Compl. ¶¶ 253–255.

4. Second Claim for Relief, Compl. ¶¶ 238–240.

Bendix ABS system installed on Chrysler, Dodge and Plymouth minivans for model years 1991 through 1993. In June and July 1994, Chrysler submitted its response to NHTSA's inquiry and produced responsive documents. Later, NHTSA upgraded into an Engineering Analysis and directed additional questions and requests to Chrysler. Aff. of William R. Edwards ("Edwards Aff."), ¶¶ 3–5, Ex. 1. In June 1995, NHTSA advised Chrysler that it had initiated an additional Engineering Analysis concerning alleged defects in the Bendix ABS system installed on Chrysler, Dodge, Eagle and Plymouth passenger cars for model years 1990 through 1993. During the course of this two-year investigation, approximately 7,000 pages of documents were exchanged between Chrysler and NHTSA. Based on the information provided, NHTSA determined that in some cases, the hydraulic control unit (HCU) on the Bendix ABS may experience excessive actuator piston seal wear which may cause pump-motor deterioration. If this occurs, the function may be lost and reduced power assist may be experienced progressively during braking. Edwards Aff. ¶ 19. On April 15, 1996, Chrysler announced a voluntary recall of Chrysler vehicles with the Bendix 10 ABS system. This recall is referred to as Recall 685, and is subject to NHTSA oversight. Edwards Aff. ¶ 10.

On September 6, 1996, NHTSA opened a Recall Query for Chrysler vehicles equipped with the Bendix 9 ABS system and directed questions and requests to Chrysler. In response, Chrysler furnished additional details that expanded Recall 685 to include Bendix 9 ABS-equipped vehicles. This recall is referred to as Recall 702 and is also subject to NHTSA oversight. Edwards Aff. ¶ 11. Recalls 685 and 702 cover all Chrysler vehicles equipped with the Bendix 9 and 10 ABS.

Pursuant to the Act and the implementing federal regulations, Chrysler sent (or soon will send) notice of the recalls to all affected vehicle owners and lessees. Edwards Aff. ¶ 13. Also for each vehicle in the recalls, Chrysler agreed, through its authorized dealers to (1) inspect and perform a specialized diagnostic test on all Chrysler vehicles equipped with the Bendix 9 or 10 ABS; (2) replace malfunctioning Bendix 9 or 10 ABS components free of charge; (3) extend the warranty on all Bendix 9 or 10 ABS components to 10 years or 100,000 miles, whichever occurs first, except for the brake actuation piston assembly and the pump-motor assembly which will have lifetime coverages; and (4) reimburse prior and current owners for previous Bendix 9 or 10 ABS component expenses within the limits of the extended warranty. Edwards Aff. ¶ 14.

## DISCUSSION

■ Rule 23 of the Federal Rules of Civil Procedure sets forth four general preconditions that putative class representatives must satisfy before any case is certified as a class action:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed.R.Civ.P.* 23(a). Additionally, Rule 23(b) defines four different types of class actions, and the party seeking certification must demonstrate that the case falls within one of the Rule 23(b) categories. The Plaintiffs bear the burden of proving that the proposed class action satisfies each of the requirements of Rule 23(a) and one of the prerequisites of Rule 23(b). *See Baby Neal v. Casey,* 43 F.3d 48, 55 (3d Cir.1994).

■ A motion for class certification should not turn on the court's evaluation of the merits of the parties' legal or factual claims. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). However, the court may find it necessary to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied. *See Castano v. American Tobacco Co.,* 84 F.3d 734, 744 (5th Cir.1996) (citing Manual for Complex Litigation 3d § 30.11 (3d ed.1995)).

Plaintiffs have moved for class certification under *Fed.R.Civ.P.* 23(b)(3). The Court will now proceed to address whether Plaintiffs are entitled to class certification under this provision. Because the Court concludes that class certification is not appropriate under Rule 23(b)(3), the Court need not and does not reach the question whether Plaintiffs have satisfied the threshold Rule 23(a) requirements. Further, Chrysler does not argue that Plaintiffs have failed to satisfy the threshold Rule 23(a) requirements.

In order for a class action to be certified under Rule 23(b)(3), the putative class representatives must show, in addition to the four general prerequisites of Rule 23(a), that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Fed.R.Civ.P.* 23(b)(3). The Supreme Court recently interpreted Rule 23(b)(3)'s requirements when it affirmed the Third Circuit's determination that certification of a nationwide settlement class for alleged asbestos victims was improper. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), *aff'g Georgine v. Amchem Prods., Inc.,* 83 F.3d 610 (3d Cir.1996).

Whether "questions of law or fact common to members of the class predominate over any questions affecting only individual members" may be referred to as the predominance requirement. The predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy ..." *Amchem Prods.,* 521 U.S. 591, 117 S.Ct. at 2249. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* (further citation omitted).

The Supreme Court has noted that the predominance requirement is not met when there exist a greater number of questions peculiar to the several categories of class members and to individuals within each category, where such uncommon questions are significant. *Id.,* 521 U.S. 591, 117 S.Ct. at 2250. The predominance inquiry must also focus upon the cohesiveness of the class as to commonality of remedies. *Id.*

■ The predominance inquiry must also take stock of the applicable law. Common questions of law may be said to predominate when significant legal issues are common to each class member's cause of action or to the defense of such claims. Thus, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws ... Even mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement." *Id.,* 521 U.S. 591, 117 S.Ct. at 2250.

However, where the applicable law derives from the law of the 50 states, as opposed to a unitary federal cause of action, differences in state law will "compound the [ ] disparities" among class members from the different states. *Id.* Thus, as discussed more fully below, certification of a nationwide class in which the law of the 50 states, rather than federal law, must be identified and applied, places the burden upon plaintiffs to "credibly demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.' " *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1017 (D.C.Cir.1986) (citations omitted); *see Georgine,* 83 F.3d at 627; *Castano,* 84 F.3d at 740; *In re American Med. Systems, Inc.,* 75 F.3d 1069, 1085 (6th Cir.1996).

■ That common issues must be shown to "predominate" does not mean that individual issues need be non-existent. All class members need not be identically situated upon all issues so long as their claims are not in conflict with each other. *Eisenberg v. Gagnon,,* 766 F.2d 770, 786 (3d Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). *Hassine v. Jeffes,* 846 F.2d 169, 176–77 (3d Cir.1988). The individual differences, however, must be of lesser overall significance and they must be manageable in a single class action, as discussed further below.

In the present case, Plaintiffs cite numerous examples of allegedly common questions of law and fact, including: (a) whether the

ABS systems are defective; (b) whether Chrysler knew or reasonably should have known that the vehicles contain a dangerous defect; (c) whether Chrysler caused the distribution and sale of the vehicles under false pretenses by, among other things, concealing the alleged defect; (d) whether Chrysler's conduct violated common and/or statutory law as alleged; and (e) whether the proposed class members have been damaged by Chrysler. Compl. ¶¶ 145–146.

Plaintiffs identify the core liability issue as the determination whether the ABS system is defective, and have asked that if the Court determines that the requested class certification is inappropriate, it alternatively certify a class solely for the purpose of determining whether a defect exists. Plaintiffs assert that the liability issues are predominantly common because the ABS in the vehicles belonging to class members are allegedly identical in material respects, as Plaintiffs argue that "[a]lthough there are certain other minor differences between the Bendix 9 and the Bendix 10 systems, they are identical with respect to the primary system components and the defects contained therein upon which this action is based." Compl. ¶ 166.

Plaintiffs argue that their breach of contract and breach of express and implied warranty claims present predominantly common issues centering upon whether the vehicles have defective ABS systems that render the vehicles unfit for their ordinary use. Also, Plaintiffs argue that Chrysler fraudulently concealed the alleged defect and misrepresented the safety of the ABS systems to purchasers. Chrysler, on the other hand, argues that no class-wide proofs of defect can be available for a class that includes members who have suffered no ABS failure in their vehicles. Chrysler also alleges that the proposed class members who have experienced problems with their ABS systems each have different causation problems to overcome, and different types of damage, requiring individual proofs of causation and damages.

Each of the proposed class members claims that the alleged defect in the ABS system, whether it has manifested itself or not, has caused their vehicles to lose value.

As part of Chrysler's nationwide recall, free replacement of the ABS systems has already been offered to all class members who have had any problems with their ABS system or whose ABS system fails a diagnostic test. Those class members who have not experienced problems with their ABS system also seek the remedy of free replacement of their ABS systems, in order to avoid any potential harm in the future. Plaintiffs also seek other damages and injunctive relief as is available. Generally speaking, the class action mechanism can be used as an efficient means of obtaining a remedy for a property damage claim which is relatively insignificant for an individual to pursue, but which becomes highly significant when numerous similarly situated persons are joined. *See, e.g., Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device.")

With this background in mind, the Court determines whether Plaintiffs have shown that the proposed class is certifiable. The Court will deny Plaintiffs' motion for class certification under Rule 23(b)(3) because Plaintiffs have not satisfied either the common question (predominance) prong or the superiority prong of the rule. As described below, the principal reason for denying class certification is Plaintiffs' failure to demonstrate a suitable and realistic plan for trial of the class claims which arise under the differing laws of the 50 states as well as the District of Columbia and Puerto Rico. If the Court were to certify a class including those class members who have not experienced any ABS problems, the Court would likely be compelled to create numerous subclasses taking account of the variations in state law concerning whether or not such plaintiffs have a remedy available under each of the asserted state law causes of action. For those proposed class members who have experienced problems with their ABS systems, the problem of applying the differing state laws is added to by the problem of proving

that in each case the problems experienced were actually caused by the alleged defect in the ABS systems.

### 1. *The Predominance of Issues Affecting Only Individual Class Members*

With respect to the certification of the proposed class, including members who have allegedly sustained ABS failure and members who have not encountered any such problems, the Court must examine whether class-wide issues are likely to predominate. These issues would be adjudicated under the relevant laws of the 50 states, pertaining to potentially each of the five causes of action arising under state law.

For the reasons next discussed, the finding that class-wide issues do not predominate over issues involving only individual plaintiffs results from the following three conclusions reached by the court: (1) even the basic question of whether Plaintiffs' ABS systems are defective will depend on the application of the laws of all 50 states and perhaps upon facts particular to each individual Plaintiff; (2) Plaintiffs have failed to show that issues such as privity, reliance and Chrysler's affirmative defenses may be adjudicated on a class-wide basis; and (3) the Court is compelled to apply the law of each Plaintiff's home state to that Plaintiff's claims, and thus class-wide disposition of the claims would essentially be impossible.

### A. *Common Factual Issues Do Not Predominate*

#### a. *Proving a Class-wide Defect*

■ It must be noted that the sweeping nature of Chrysler's 1996 recall is a factor favoring the predominance of class-wide issues in this case. However, the sweeping nature of the recall does not preclude Chrysler from contending in a legal suit for damages that its liability will turn on issues that affect each of the proposed class members differently and that even the issue of whether a common defect exists renders this class action unmanageable.

First, whether or not there is a defect would have to be decided according to the laws of each of the 52 applicable jurisdictions.

Second, most of the potential class members have never experienced any problems with their ABS systems. Proving a class-wide defect where the majority of class members have not experienced any problems with the alleged defective product, if possible at all, would be extremely difficult. Even where the alleged defect has manifested itself, individual issues of actual cause must be adjudicated. Because of the plethora of Plaintiffs' causes of actions under divergent state laws, proving the existence of the alleged class-wide defect is not the simple task that Plaintiffs make it out to be and is a factor that weighs against a finding of factual predominance.

Chrysler points out that another judge in this district recently denied class certification of breach of warranty and fraud claims in a case that is similar to the present action, involving allegedly defective Ford ignition switches. *In re Ford Motor Company Ignition Switch Products Liability Litigation,* 174 F.R.D. 332 (D.N.J.1997). In *Ford Ignition Switch,* the principal reasons for denying class certification were the substantial variations in state law and the inability to try individualized issues as a class action. Plaintiffs argue that the decision in *Ford Ignition Switch* is not similar to the present action since the Court found in that case "that the question of defect may be likely to turn in this case on the facts particular to each individual plaintiff, or at the very least, assessments or risks for each of the 158 model/years at issue." *Id.* at 342; Pl. Supplemental Br. at 10–13.

While Chrysler does not argue that there are anywhere near the number of variables in question in this case, it does contend that, as described above, the common defect issue would require the application of the laws of the 52 applicable jurisdictions, as well as individual determinations of actual causation. Chrysler's Supplemental Br. at 2–3. Chrysler also argues that the record is devoid of any competent evidence of a common or class-wide defect. Chrysler points out that the Complaint alleges two different problems with the Bendix 9 and 10 ABS systems. The Complaint asserts that certain piston seals do not provide an adequate seal which may

cause the system's pump to run, and this in turn may cause the pump to burn out in some cases if a repair is not made in time. Compl. ¶¶ 168–69. The Complaint also asserts that some brake systems may have a hydraulic bladder accumulator that is unable to store sufficient pressure, which may in turn cause problems for some brake systems. Compl. ¶ 170. Chrysler also points out that there is no allegation and no evidence that all or even a majority of brake systems will manifest the alleged defects. Def. Supp. Br. at 3.

While this case does not present as many individual variables on the defect issue as did *Ford Ignition Switch*, however the obstacles to proving a class-wide defect pointed out by Chrysler weigh against a finding of factual predominance. Presumably, state warranty law would be used to determine whether or not a class-wide defect exists, since Plaintiffs do not assert a claim for strict products liability as, for example, the plaintiffs did in *Ford Ignition Switch*. 174 F.R.D. at 338. The parties do not address this issue. While Plaintiffs contend that the laws of the 52 jurisdictions concerning the issue of a common defect could be grouped into manageable subclasses, they have not set forth a plan for implementing such groupings or for the trial of the defect issue. Even if Plaintiffs could create such manageable subclasses, Plaintiffs have also failed to show how they would deal with the individualized causation issues.

b. *The Adjudication of Secondary Issues such as Privity, Affirmative Defenses and Reliance on a Class–Wide Basis*

■ An analysis of issues in this case other than the defect issue further reveals the lack of truly class-wide issues that are implicated by Plaintiffs' claims. For example, under the law of some states, for a plaintiff to prove an implied warranty claim, the plaintiff must demonstrate contractual privity with the defendant. *See, e.g., Flory v. Silvercrest Indus., Inc.,* 129 Ariz. 574, 633 P.2d 383 (1981); *Osborne v. Subaru of Am., Inc.* 198 Cal.App.3d 646, 243 Cal.Rptr. 815, 820–21 (1988). Plaintiffs from these states will have to prove that they purchased their Chrysler vehicle either from Chrysler itself or from one of its agents, as opposed to an independent car dealer or another individual. This will require the Court to undertake an inquiry that will turn on facts particular to such individual plaintiffs.

Similarly, with regard to Plaintiffs' fraud claims, Plaintiffs generally may not prevail without proving the element of reliance. *See, e.g., Hanlon v. Thornton,* 218 Ga.App. 500, 462 S.E.2d 154, 156–57 (1995). That is, Plaintiffs must persuade the finder of fact that disclosure of the allegedly dangerous nature of the ABS systems would have affected the purchaser's decision whether to purchase the vehicle. While Plaintiffs assert that reliance may be presumed in the present action, the Court takes note of the Advisory Committee comments to Rule 23 recognizing that certification under Rule 23(b)(3) "may be unsuitable in fraud cases where there are variations in the kinds or degree of reliance by the persons to whom the alleged misrepresentations were addressed." Another district court recently rejected the plaintiffs' assertion in that case that reliance could be presumed in the adjudication of a common law fraud claim in a proposed nationwide class action. *In re Ford Motor Company Vehicle Paint Litigation,* 182 F.R.D. 214, 220–21 (E.D.La.1998). In *Ford Vehicle Paint Litigation,* the court undertook an extensive state law analysis of the treatment of this issue and determined "that the vast majority of states have never adopted a rule allowing reliance to be presumed in common law fraud cases, and some states have expressly rejected such a proposition." *See id.* at 221 (and cases cited therein).

*Ford Ignition Switch* also recognized the difficulties involved in adjudicating highly individualized issues in a class action. The Court in *Ford Ignition Switch* explained that issues such as those presented in this case, including, privity, reliance and affirmative defenses (e.g. contributory negligence, statute of limitations), may present insuperable obstacles to class certification. 174 F.R.D. at 346–47.

The preceding discussion encompasses just a few of the issues in these cases that, at trial, would require the court to analyze facts

particular to individual plaintiffs. The number and significance of issues that affect different plaintiffs differently persuade the Court that class-wide factual issues do not predominate.

### B. *Common Legal Issues Do Not Predominate*

#### a. *Choice of Law Considerations*

At the outset the Court must determine which law to apply to this action. When a federal court exercises diversity jurisdiction, it must determine which state's law to apply by reference to the forum state's law governing choice of law. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In the typical diversity case the court would look to New Jersey's choice-of-law analysis and determine which state's law governs some or all issues, from among two or three candidates. Likewise, in nationwide class actions, choice of law constraints are constitutionally mandated. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821–23, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). The parties before this Court have a due process right to have their claims governed by the state law applicable to their dispute. In the context of class certification, the Supreme Court has cautioned that the court "may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirements that there be a 'common question of law.'" *Id.* at 821, 105 S.Ct. 2965. The Third Circuit has similarly mandated that "the dictates of state law may not be buried under the vast expanse of a federal class action." *In re School Asbestos Litigation,* 789 F.2d 996, 1007 (3d Cir.1986). More recently, the Third Circuit mandated "apply[ing] an individualized choice of law analysis to each plaintiff's claims." *Georgine,* 83 F.3d at 627. The application of New Jersey's choice-of-law rules to the present action, clearly leads to the necessity of applying the law of 50 states if a nationwide class is certified.

New Jersey choice of law principles require an interest analysis, in which the forum court compares the interests of the states whose laws are potentially involved in the underlying action and determines which state has the greatest interest in having its law applied. *See Gantes v. Kason Corp.,* 145 N.J. 478, 679 A.2d 106 (1996). Chrysler argues that a choice of law analysis leads to the conclusion that the laws of each Plaintiff's home state must be applied because those states have interests that outweigh the interests of New Jersey. The Court agrees.

Each Plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws. These interests arise by virtue of each state being the place where Plaintiffs reside, or the place where Plaintiffs bought and used their allegedly defective vehicles or the place where Plaintiffs' alleged damages occurred.

Plaintiffs argue that the Court can apply New Jersey law in the present action. While it might be desirable for the sake of efficiency to settle upon one state, such as New Jersey, and apply its law in lieu of the other 49 jurisdictions, due process requires individual consideration of the choice of law issues raised by each class member's case before certification. Since the laws of each of the 50 states vary on important issues that are relevant to Plaintiffs' causes of action and Chrysler's defenses, the Court cannot conclude that there would be no conflict in applying the law of a single jurisdiction. Thus, the Court will need to apply the law of each of the states from which Plaintiffs hail. This conclusion, of course, creates problems for class certification itself, as discussed below. *See Georgine v. Amchem Prods., Inc.,* 83 F.3d 610 (3d Cir.1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (individualized choice of law analysis for each plaintiff's claims in a nationwide class action led to proliferation of disparate factual and legal issues and a lack of predominant common issues).

#### b. *Variations in State Law*

Plaintiffs have asserted five causes of ac-

tion arising under state law.[5] Chrysler argues that the difference in applicable state laws preclude a finding that common issues of law predominate, since the Court will be faced with the prospect of applying the laws of all 50 states, as required by *Erie R.R. v. Tompkins,* 304 U.S. 64, 78–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ Plaintiffs correctly point out that the existence of state law variations is not alone sufficient to preclude class certification. *See, e.g., In re School Asbestos Litig.,* 789 F.2d 996, 1011 (3d Cir.1986), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986) (granting conditional certification of class while noting problem of manageability); *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 815 (3d Cir.), *cert. denied,* 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995) (overturning nationwide class settlement but noting that courts have certified nationwide class actions relying on capacity for court to decertify or redefine class subsequently if case becomes unmanageable).

■ In a motion for class certification, plaintiffs bear the burden of providing an "extensive analysis" of state law variations to determine whether there are "insuperable obstacles" to class certification. *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1017 (D.C.Cir.1986) (citing *In re School Asbestos Litig.,* 789 F.2d at 1010). "If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action." *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1085 (6th Cir.1996) (reversing certification of nationwide class in products liability case). "Prior to certification, the district court must determine whether variations in state law defeat predominance." *Castano,* 84 F.3d at 750.

Plaintiffs assert that any differences in state law for each cause of action are minor and can be managed by grouping together jurisdictions whose laws are similar. Plaintiffs' original briefs provide a comparative analysis of the states' laws with regard to each of their state law causes of action. Plaintiffs have also submitted their Supplemental Brief, which argues in favor of the manageability of this action and provides a comparative compilation of the laws of each applicable jurisdiction in relation to each of their claims.

The Court in *Ford Ignition Switch* noted that the plaintiffs in *In re Prudential Insurance Co. of America Sales Practices Litigation,* 962 F.Supp. 450 (D.N.J.1997), *aff'd,* 148 F.3d 283 (3d Cir.1998), submitted sample jury instructions and special verdict forms, in addition to a comprehensive compilation of the differences in state law, to illustrate that variations among potentially applicable state laws can be managed to permit a fair and efficient adjudication by the fact finder at trial. *Id.* at 525 n. 49. In the present action, Plaintiffs simply mention that jury instructions and special verdict forms could be "easily" employed by the Court to make this action manageable. However, Plaintiffs do not submit any samples of these forms as was done in *Prudential* to demonstrate a trial blueprint. "Despite Plaintiffs' burden to provide an 'extensive analysis' of state law variations, they have not explained how their multiple causes of action could be presented to a jury for resolution in a way that fairly represents the law of the 50 states while not overwhelming jurors with hundreds of interrogatories and a verdict form as large as an almanac." *Ford Ignition Switch,* 174 F.R.D. at 349.

■ Plaintiffs had several options for creation of a more manageable class action. For instance, Plaintiffs could have reduced or simplified the case by dropping those causes of action deemed less important by Plaintiffs, or by the creation of a smaller and more

---

**5.** Plaintiffs' claim for equitable (injunctive and declaratory) relief depends on Plaintiffs' ability to demonstrate that they have been injured as a result of Chrysler's alleged misconduct, either through fraud or breach of warranty (express or implied). Also, Plaintiffs' Magnusson Moss claim derives from the breach of warranty claims. Therefore, for purposes of determining the applicable state laws to apply, the Court need only consider the laws concerning express and implied warranty and fraud.

clearly defined proposed class. Plaintiffs also could have made concrete proposals for the creation and utilization of subclasses. Instead, Plaintiffs have asked this Court to certify the largest class possible here, including both people who have and have not experienced problems with their ABS systems. Plaintiffs essentially ask the Court to certify this class on the basis of mere promises that a manageable litigation plan can be designed in this case for five causes of action under the law of 52 jurisdictions as the litigation progresses. As the Court determined in *Ford Ignition Switch,* "[t]his Court declines to certify this class action on the basis of such a slender reed." 174 F.R.D. at 350. While Plaintiffs do argue in their brief that the Court can certify a smaller class or create subclasses if necessary, Plaintiffs, not the Court, have the burden of designing a workable plan for trial embracing all claims and defenses prior to class certification. "A court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome." *Castano,* 84 F.3d at 742; *accord, Andrews v. American Telephone & Telegraph Co.,* 95 F.3d 1014, 1023 (11th Cir.1996).

Further, as the Court noted in *Ford Ignition Switch,* neither party here has cited to a case in which a federal court has tried a class action which would require the application of the laws of 52 jurisdictions. 174 F.R.D. at 349. Plaintiffs' briefs cite repeatedly to the decision of the Court in *Prudential,* which certified a nationwide settlement class of eight million consumers who purchased life insurance policies from Prudential. Although *Prudential* nominally contemplates the application of the laws of 51 jurisdictions, the decision to certify, and the affirmance that followed, were in the context of a proposed settlement of a putative class action with extremely different factual circumstances, and certification was not strenuously opposed, as it is here by Chrysler. Indeed, Prudential joined in the motion for class certification as part of the overall negotiated settlement.

In considering the *Prudential* decision, the Court in *Ford Ignition Switch* also pointed out that where a settlement-only class certification is being considered, the court contemplating certification of a Rule 23(b)(3) class "need not inquire whether the case, if tried, would present intractable management problems, *see Fed.Rule Civ.Proc.* 23(b)(3)(D), for the proposal is that there be no trial," as the Supreme Court recently noted in *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2248, 138 L.Ed.2d 689 (1997). Thus, although the Court found in *Prudential* that a manageable number of issues could have been distilled into a common trial if the matter had been litigated rather than settled, such a finding is now unnecessary in the settlement-only class certification.

Chrysler has provided its own compilation of the variations among the states' laws on Plaintiffs' claims for breach of express and implied warranty and fraud. Plaintiffs argue that the analysis of each jurisdiction's law under each of these causes of action shows that any of the minor variations in state law may be broken down into manageable groups. *See* Plaintiffs' Supplemental Br. 14–23. Defendants argue that in many cases Plaintiffs' breakdown is either wrong or shows that the existing variations are not minor and cannot be broken down into manageable groupings. Chrysler catalogues a number of differences concerning several aspects of the relevant laws of each state on many key issues. For example, Chrysler points to numerous approaches to defining a class-wide defect under Plaintiffs' causes of action. Chrysler's Supplemental Br. at 6, 14–17. Chrysler also attempts to show that positions differ among the 52 applicable jurisdictions as to the applicability or the availability of consequential or incidental damages, and the affirmative defenses of contributory or comparative negligence. Chrysler's Supplemental Br. at 9–12. These are just a few examples of the legal issues that must be determined under the laws of the 52 jurisdictions. This does not necessarily mean that the Court believes that the law of each of the 52 jurisdictions for each cause of action is so different that creating manageable subgroups would be impossible. However, while Plaintiffs argue that the state law variations could be dealt with in manageable sub-

groups, they have not attempted to show how this could actually work at trial.

As to the variations in the applicability of the "vertical privity doctrine" in breach of warranty cases, Plaintiffs concede that differences regarding this doctrine constitute a "substantive disagreement between the states," (Pl. Supp. at 20), and offer a grid, (*Id.* at Ex. 2), purporting to show the states that require vertical privity and those that do not. Plaintiffs assert that "privity" does not pose manageability problems because they plan to demonstrate on a class-wide basis that privity is satisfied through an agency relationship between Chrysler and its dealerships. . This is not a new issue; in its March 7, 1997 Opinion denying Chrysler's motion to dismiss as premature, the Court noted:

> Plaintiffs cited several cases in support of the proposition that an agency relationship satisfies the privity requirement for purposes of bringing an implied warranty action, Plaintiffs did not, however, establish this proposition as to each of the fifteen states that-according to Chrysler-require privity.

Opinion at 9 n. 9. While well aware of the issue, Plaintiffs have still failed to show that the state law differences concerning the "vertical privity" doctrine do not pose manageability problems.

Chrysler also points out that state law varies concerning claimants who have not experienced any property damage as a result of the brake systems at issue. Chrysler's Opp. Br. at 12–19. These state law variations are important, since the majority of the Plaintiffs have not suffered ABS failure, and seek relief for an alleged defect that has not manifested itself or caused damage in their vehicles. Chrysler's Supplemental Br. at 23–25. In most jurisdictions, the courts recognize that unless a product actually manifests the alleged defect, no cause of action for breach of express or implied warranty or fraud is actionable. *See, e.g., In re General Motors Corp. Anti–Lock Brake Prods. Liab. Litig.,* 966 F.Supp. 1525 (E.D.Mo.1997) ("*GM ABS*") (Complaint subject to dismissal for failure to plead damages where only allegation was economic loss from an alleged class-wide defect); *Hubbard v. General Motors*

*Corp.,* 1996 WL 274018, *3 (S.D.N.Y.1996) (holding plaintiff must allege defect manifested itself in his or her product to state claim for relief); *Barbarin v. General Motors Corp.,* 1993 WL 765821, *3 (D.D.C.1993) (dismissing claims of plaintiffs whose cars had not manifested defect); *Yost v. General Motors Corp.,* 651 F.Supp. 656, 657 (D.N.J.1986) (holding design defect likely to cause damage not actionable); *Feinstein v. Firestone Tire & Rubber Co.,* 535 F.Supp. 595, 603 (S.D.N.Y. 1982) (holding no cause of action for defect that never manifests itself); Chrysler's Supp. Br. 13, 23–25 and Chrysler's Opp. Br. at 12–19. Plaintiffs assert that some jurisdictions have refused to dismiss such claims even though the alleged defect had not manifested itself. *See, e.g., General Motors Fuel Tank Litig.,* 55 F.3d at 814–17 (In overturning district court's certification of settlement class, the Third Circuit did not preclude the idea that class members who had not actually incurred problems with their automobiles might be entitled to equitable and monetary damages); *In re Ford Motor Co. Vehicle Paint Litig.,* 1996 WL 426548, *22 (E.D.La. July 30, 1996) (court denied motion to dismiss implied warranty claims under South Carolina law, determining that it was not convinced that South Carolina courts would follow the reasoning of courts that have found no cause of action where the alleged defect has not manifested itself); *Garbo v. Ford Motor Co.,* 1982 WL 1957, 1983–2 Trade Cas. (CCH) ¶ 65,701 (D.D.C. Dec. 12, 1982) (in Magnusson Moss action, court refused to dismiss breach of express warranty claims of plaintiffs who did not incur any problems during warranty period); Pl. Reply Br. at 12–13.

Therefore, it is clear that there are substantial variations in state law concerning the claims of those Plaintiffs who have not suffered any problems with their ABS systems. These differences also apply to those who have suffered problems with their ABS systems, since each Plaintiff would have to show that the alleged defect caused his or her problems with the ABS system in order to recover. Such variations, which are likely to preclude recovery for some plaintiffs, further

show that common issues of law do not predominate.

A number of recent cases also described the effect on the predominance inquiry of situations where the state law variations were similar to those present in this case. For example, in *Ford Ignition Switch,* the Court denied class certification of breach of warranty and fraud claims principally on the grounds of substantial variations in state law and the inability to try disparate issues as a class. 174 F.R.D. at 341–42. In reaching this conclusion, the Court relied on an extensive analysis of state law differences offered by Ford, on the fact that "no federal court had tried a class action which would required the application of the laws of the fifty one jurisdictions," and on plaintiffs' failure to provide an extensive state law analysis or any proposed jury instructions or verdict forms that would solve difficulties presented by state law variations. *Id.* at 349, 350–51.

This case shares with *Ford Ignition Switch* almost the identical problems posed by the substantial variations among state laws. 174 F.R.D. at 348. Chrysler's Supplemental Brief and Opposition Brief contain the "extensive analysis" of state law variations as relied upon in *Ford Ignition Switch.* Furthermore, it remains true that no federal court has attempted to try a case under the laws of every state. While Plaintiffs have submitted an extensive analysis of the relevant state law, they have offered no jury instructions or verdict forms to overcome the manageability difficulties posed by this action.

In another case where the claims are factually and legally similar to the present action, *GM ABS,* 966 F.Supp. 1525, the court dismissed with prejudice a complaint purporting to base a nationwide class on claims arising out of alleged defects in GM's antilock brakes. In *GM ABS,* the complaint alleged that GM's ABS was "an inferior antilock brake system which extends the distance needed for stopping, increasing the possibility for accidents." 966 F.Supp. at 1529. The plaintiffs also asserted that the alleged defect was present in all of the vehicles in question, whether it had manifested itself or not. Plaintiffs make the same assertions here.

*GM ABS* held that dismissal of the plaintiffs' complaint in its entirety was warranted because plaintiffs failed to adequately plead damages based on their claims that their vehicles were worth less because of the alleged defect in the ABS system. *GM ABS* also determined that the plaintiffs' implied warranty claim was subject to dismissal since the plaintiffs had failed to allege that the purported brake defect had manifested itself in their vehicles. *Id.* at 1530, 1536. *GM ABS* also held that the plaintiffs' claims under state consumer fraud statutes must be dismissed because the plaintiffs had failed to adequately plead their claim under the myriad of variations in state consumer fraud law. 966 F.Supp. at 1536. While *GM ABS* dealt with a motion to dismiss rather than class certification, the facts of that case are very similar to the present action and the reasoning employed in the case aptly points out the many differences in state law faced in the present action.

 Viewing the state law variations in the context of a case involving five state-law causes of action, the laws of the 52 applicable jurisdictions, and a very large number of plaintiffs, the Court must conclude that this suit cannot be practically and efficiently tried as a class action because Plaintiffs have not established a predominance of common legal issues as required by Rule 23(b)(3). *See Georgine,* 83 F.3d at 618 ("[E]ach individual plaintiff's claim raises radically different factual and legal issues from those of other plaintiffs. These differences, when exponentially magnified by choice of law considerations, eclipse any common issues in this case. In such circumstances, the predominance requirement of Rule 23(b) cannot be met."); *In re Ford Motor Co. Bronco II Product Liability Litig.,* 177 F.R.D. 360 (E.D.La.1997) (refusing to certify class on "record that reflects so many variations in state laws that common questions of law clearly cannot be said to predominate for purposes of Rule 23(b)(3)"); *In re Masonite Hardboard Siding Litig.,* 170 F.R.D. at 422–24 (rejecting proposal for "defect only" trial because "composite instructions accounting for all of these difference would hazard a

chaos that seems counter-intuitive to the spirit of Rule 23").

## 2. *The Superiority of the Class Action*

■ The second requirement of Rule 23(b)(3) is that the putative class representatives demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The putative class representatives must satisfy both the predominance and the superiority requirements in order to be successful on their class certification motion. The Court concludes that even if Plaintiffs could have satisfied the predominance requirement, their class certification motion would fail on the basis of the superiority requirement.

In general it is desirable to litigate similar, related claims in one forum. That interest is especially significant in cases such as this in which the recovery being sought by each of the plaintiffs is not sufficiently large to render individualized litigation a realistic possibility. *See, e.g., Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). On the other hand, Plaintiffs' efficiency-based arguments on this point begin to lose their force as one attempts to plan the post-certification trial of Plaintiffs' claims. As discussed previously, there are numerous factual issues in this case that cannot be adjudicated on a class-wide basis, and even the governing law will vary from plaintiff to plaintiff. If there existed only a limited number of issues for which there could be no class-wide resolution, the Court could perhaps certify these cases as class actions and then take steps to alleviate the problems raised by these issues. In short, the Court perceives that, if certified as presently proposed, this case would quickly devolve into an unmanageable morass of divergent legal and factual issues. *See Fed. R.Civ.P.* 23(b)(3) (noting that court evaluating superiority of class action device in given case should consider "the difficulties likely to be encountered in the management" of the class action). Moreover, such divergent issues are sufficiently numerous to negate any efficiencies brought on by the use of the class action device in this case. The Court notes that these manageability problems would be most acute in relation to the large number of proposed class members who have not suffered any sort of ABS failure in their vehicles. As discussed earlier, in many jurisdictions, the courts recognize that unless a product actually manifests the alleged defect, no cause of action for breach or warranty (express or implied) or fraud is actionable. *See* Chrysler's Opp. Brief at 12–19.

Similarly, bifurcating this case for the purpose of resolving more general issues in class form would not alleviate the problems that the Court perceives. If there were certain basic issues, such as defect, to which only one state's laws applied and concerning which class-wide issues predominated, the Court could consider certifying a class with respect to those issues only. *See Fed.R.Civ.P.* 23(c)(4). However, as discussed previously, even as to basic issues of defect, class-wide resolution may be inappropriate in this case. Plaintiffs have failed to set forth a proposal as to how the existence of the alleged common defect could be manageably determined following class certification solely on that issue.

In considering the superiority of the class action mechanism, the district court in *Ford Vehicle Paint Litig.* considered the plaintiffs' detailed proposal to initially hold proceedings solely to determine the core liability issue (defect), on a class-wide basis. 182 F.R.D. at 223. Unlike the present action, *Ford Vehicle Paint Litigation* involved only one state law cause of action, for fraudulent concealment, and the plaintiffs in that action had also submitted a detailed trial plan, including the formulation of subclasses. *Id.* 182 F.R.D. at 215–20. In that case, potentially involving the law of 50 jurisdictions, the court determined that common issues of law and fact did not predominate for largely the same reasons discussed previously in this opinion. *Id.* 182 F.R.D. at 219–23. The court further determined that "[e]ven if it were appropriate to fragment a core liability trial on Ford's conduct from minitrials on causation, reliance, damages and affirmative defenses, this would seem to defeat the purported economies of class treatment." *Id.* at 182 F.R.D. at 224 (citing *In re Masonite Hardboard Siding*

*Litig.*, 170 F.R.D. at 425–26). This Court sees the same problems here.

While Plaintiffs do present the Court with an analysis of the laws of each of the 50 states for each of their causes of action, they fail to meet their burden of setting forth a workable plan for dealing with these issues at trial. Plaintiffs merely assert that through the use of subclasses, jury interrogatories and special verdict forms any differences in state law could be made manageable. The Court's analysis in this area would have been aided by a realistic, specific proposal by Plaintiffs concerning how subclasses could be constructed and implemented in this case. Without the aid of such a proposal, the Court has made an independent review of the possibility of subclasses and bifurcation, and it has concluded that such remedies alone could not be used to render this case appropriate for class certification in a federal forum. If class treatment of Plaintiffs' claims is possible at all, perhaps it could be handled on a state by state basis. *See Georgine,* 83 F.3d at 634 (suggesting a similar resolution).

The lack of superiority of a nationwide class action in this case is also shown by the fact that, as a result of Chrysler's voluntary recall, it is unclear if there is any useful remedy this Court could fashion under the laws of certain states even for those Plaintiffs who have suffered problems with their ABS systems. Recalls 685 and 702 encompass all Chrysler vehicles equipped with Bendix 9 or 10 ABS. Plaintiffs seek "restitution of all costs incurred by plaintiffs and members of the Class in connection with the purchase, replacement or repair of the Bendix ABS systems ..." Compl. ¶ 9. Under the recalls, Chrysler is reimbursing prior and current owners for previous repairs to their Bendix ABS. Edwards Aff. ¶ 14. The Court does not see what expenses could be the subject of a restitution order, if Chrysler has already reimbursed Plaintiffs.

Plaintiffs additionally request this Court to remove any "time mileage and damage limitations given in connection with the implied or written warranties." Compl., Prayer for Relief. However, Chrysler's recalls also provide a "lifetime warranty" with respect to the brake actuation piston assembly and the pump-motor assembly—the ABS components alleged by Plaintiffs to be defective. Edwards Aff. ¶ 14.

Plaintiffs also ask this Court to compel Chrysler to either offer rescission to the class members by returning the full costs paid for the vehicles or alternatively, to inspect and repair the vehicles without charge. Compl. ¶ 9. However, Chrysler's recalls provide for replacement and repair of malfunctioning ABS components free of charge. Edwards Aff. ¶ 14. As to rescission, the Court notes that rescission is an equitable remedy and only available under specific limited factual circumstances. *See, e.g., Notch View Assocs. v. Smith,* 260 N.J.Super. 190, 615 A.2d 676, 679 (1992). The appropriateness of rescission would be determined under the applicable laws of the 52 jurisdictions.

Plaintiffs additionally seek compensatory damages "for their lost bargain in acquiring or leasing vehicles that had less value than had been represented to them ... and for the subsequent diminished value of their vehicles." Compl. ¶ 9. Chrysler argues that its recalls and the extension of the warranty on the Bendix ABS increases the value of the vehicles. The Court notes that the value of the vehicles is dependent on a whole host of individualized factors including, age, mileage, repair and maintenance history and accidents or damage. Thus, depending on the applicable state law formulation for considering these factors it may be found that some Plaintiffs are not entitled to any compensatory damages.

As discussed above, in connection with the variances in state law, it is clear that no remedy is available in many jurisdictions to those Plaintiffs who have not suffered any problems with their ABS. In light of repair or reimbursement pursuant to the recalls, it is also possible that some of those Plaintiffs who have suffered problems with their ABS will also be without a remedy under applicable state law. These factors weigh against a finding that a class action is the superior method of adjudication and that common issues of fact and law predominate.

■ There are also administrative remedies that are available that may be superior to the remedies sought in the nationwide class action suit that Plaintiffs have attempted to bring. Specifically, the Motor Vehicle Safety Act, 49 U.S.C. § 30101 et seq., gives NHTSA the authority to investigate complaints concerning automobile defects and to order a recall where appropriate. Any "interested person" may file a petition with the Secretary of Transportation to initiate proceedings aimed at determining whether a further recall, in addition to Chrysler's voluntary recall, would be appropriate. 49 U.S.C. § 30162(a)(2).

Most of the Plaintiffs have not suffered ABS failure, and seek relief for an alleged defect that has not yet manifested itself or caused damage in their vehicles. For those Plaintiffs who have suffered problems with their ABS systems, Chrysler's voluntary recall program provides for replacement of the malfunctioning ABS systems. The Court is convinced that in such situations, the administrative remedy provided by NHTSA, including recall of vehicles for inspection and/or repair, is more appropriate than civil litigation seeking equitable relief and money damages in a federal court. The Court concludes that there is insufficient justification to burden the judicial system with Plaintiffs' claims while there exists an administrative remedy that has been established to assess the technical merits of such claims and that can handle further recall or enforce the current recall and replacement of the ABS systems, if appropriate.[6]

■ The Court recognizes that the Motor Vehicle Safety Act and NHTSA itself do not in any way preempt a plaintiff's right to bring common law claims against the manufacturer of an allegedly defective part. *See* 49 U.S.C. Section 30103. The Court is also aware of the statutory limitations of NHTSA. The Court has also taken note that the Third Circuit has previously questioned, albeit in dicta, whether Rule 23 was "intended to weigh the superiority of a class action against possible administrative relief." *Amalgamated Workers Union v. Hess Oil Virgin Islands Corp.*, 478 F.2d 540, 542–43 (3d Cir. 1973). In fact, the *Amalgamated* court tentatively concluded that the superiority requirement "was intended only to refer to the preferability of adjudicating claims of multiple-parties in one judicial proceeding and in one forum, rather than forcing each plaintiff to proceed by separate suit." *Id.* at 543. On the other hand, this Court is not bound by dicta, and research reveals that the *Amalgamated* court's views on this topic are not universally held. *See, e.g., Pattillo v. Schlesinger*, 625 F.2d 262, 265 (9th Cir.1980); *American Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291, 44 Cal.Rptr.2d 526, 531 (1995); *Ford Motor Company v. Magill*, 698 So.2d 1244, 1245 (Fla.Dist.Ct. App.1997) (because "NHTSA has accorded present owners of the vehicles a remedy to secure a correction of the. problem to their vehicle" through nationwide recall, court elected to "defer to NHTSA" and decertified the class); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1779 at 561–62 (2d ed.1986) (criticizing *Amalgamated* as constituting an "overly restrictive reading" of Rule 23 and as being at odds with the purposes behind the superiority requirement). At any rate, the Court does not deny certification in this case based merely on the existence of NHTSA. As the Court pointed out in *Ford Ignition Switch*, "[t]he Court has mentioned

---

**6.** It is also possible that the equitable relief sought by Plaintiffs, requiring much of the same relief that is already provided for under Chrysler's NHTSA approved recall, would be inappropriate as a matter of law under the circumstances in this case. In its Opinion denying Chrysler's motion to dismiss as premature, this Court examined the determination in cases such as *Walsh v. Ford Motor Co.*, 130 F.R.D. 260 (D.D.C.1990) and *Werber, et al. v. Mercedes Benz of North America*, 152 Cal.App.3d 1039, 199 Cal. Rptr. 765 (Cal.Ct.App.1984), that monetary damages were more suitable than equitable relief in

view of the existence of an administrative remedial scheme and the difficulties in implementing the equitable relief requested. Opinion at 457–58. Although the Court regarded Chrysler's motion to dismiss Plaintiffs' request for injunctive relief as "premature", the Court determined that these cases "offer good reason for rejecting injunctive relief in the context of alleged auto defects ..." *Id.* This Court also noted the Third Circuit's determination in *General Motors Fuel Tank Litigation*, 55 F.3d at 811, that no Court had ever ordered a recall of allegedly defective vehicles; Opinion at 457.

the availability of a NHTSA remedy issue only to demonstrate that issues such as those involved in this [ ] case are likely to be more efficiently resolved by administrative action as opposed to a nation-wide, federal court class action adjudicating the rights of" the hundreds of thousands of potential class members who own or have owned Chrysler vehicles with the Bendix 9 or 10 ABS systems, the majority of whose vehicles have never manifested any problem with the ABS systems in question. 174 F.R.D. at 352.

If Plaintiffs are able to reformulate pleadings and class definitions so that a suitable blueprint for trial, emerges, in accordance with this opinion, Plaintiffs may renew their certification motion.

*Chrysler's Appeal of Magistrate Judge Chesler's June 8, 1998 Decision Staying Discovery by Chrysler Pending the Outcome of Plaintiffs' Motion for Class Certification*

Also before the Court is Chrysler's appeal of Magistrate Judge Chesler's decision staying all merits discovery by Chrysler pending the outcome of Plaintiffs' motion for class certification. In light of the Court's decision denying Plaintiffs' motion, the appeal of Magistrate Judge Chesler's decision is denied as moot.

### CONCLUSION

The Court declines to certify this case as a class action under Rule 23(b)(3). Certification under this rule is inappropriate here because Plaintiffs have failed to demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." If Plaintiffs are able to cure the numerous problems noted, they may apply again for appropriate class certification.

### ORDER

For the reasons set forth in the accompanying opinion, **IT IS** on this 10th day of September, 1998 **ORDERED** that Plaintiffs' motion for class certification pursuant to *Fed. R.Civ.P.* 23 is denied without prejudice; and

**IT IS FURTHER ORDERED** that Chrysler's appeal of Magistrate Judge Chesler's June 8, 1998 decision staying all merits discovery by Chrysler pending the outcome of Plaintiffs' motion for class certification is denied as moot.