In re JACKSON NATIONAL LIFE IN-
SURANCE COMPANY PREMI-
UM LITIGATION.

No. 5:96–MD–1122,
MDL No. 1122.

United States District Court,
W.D. Michigan,
Southern Division.

Oct. 22, 1998.

_____

**OPINION AND ORDER ON PLAIN-
TIFFS' MOTION FOR CLASS
CERTIFICATION**

McKEAGUE, District Judge.

Plaintiffs in this multidistrict case are purchasers of or persons beneficially interested in life insurance policies underwritten and sold by defendant Jackson National Life Insurance Company ("Jackson National"). Plaintiffs allege they suffered loss due to Jackson National's misrepresentations. The consolidated amended complaint expressly asserts the claims of individual plaintiffs from Texas, Ohio, Arizona, Oklahoma, California and Illinois.[1] Named de-

---

1. One action transferred to this Court by the Multidistrict Litigation Panel from the Northern District of Illinois for consolidation in this litiga-

tion, *Donald C. Battaglia v. Jackson National Life Insurance Co.,* W.D. Mich. No. 5:97–CV–243, asserting a claim exclusively under the Illinois

fendants are Jackson National; its wholly-owned subsidiary, Jackson National Life Insurance Company of Michigan; and their holding company, Brooke Life Insurance Company. Michigan is the principal place of business for all three defendants, collectively referred to herein as "Jackson National." Plaintiffs seek compensatory and injunctive relief, asserting claims for fraud, breach of fiduciary duty, negligent misrepresentation, negligent supervision of sales agents, breach of contract, unjust enrichment, and violation of Michigan's Pricing and Advertising Act. Now before the Court is plaintiffs' motion for class certification.

## I. PLAINTIFFS' CLAIMS

The individual plaintiffs named in the consolidated complaint purport to proceed on their own behalf and on behalf of a class of similarly situated persons.

Plaintiffs allege they were induced to purchase permanent life insurance policies with substantial death benefits and accumulated cash values by false, incomplete and misleading sales representations and information disseminated by Jackson National. More specifically, they allege they paid large lump sum premiums or large fixed premiums for a number of years in reliance upon representations that future premiums would "vanish" as interest and other values accumulated and became sufficient to pay remaining premiums. In the 1990s, however, when interest rates declined and the interest earned on those large payments failed to produce sufficient income to pay remaining premiums, plaintiffs were advised that their premiums had not vanished as anticipated and that additional out-of-pocket premium payments were required to maintain the policies. Consequently, plaintiffs have been faced with the choice of either incurring the unexpected expense of continuing premium payments or surrendering the policies at substantial loss. They pray for compensatory and punitive or exemplary damages, injunctive relief enjoining Jackson National's deceptive practices

and requiring Jackson National to pay for the costs of providing life insurance conforming to the sales representations, and an order imposing a constructive trust upon or requiring disgorgement of Jackson National's ill-gotten gains.

Plaintiffs ask the Court to certify a class consisting of "all persons who purchased whole life, or other types of permanent life insurance policies solicited, underwritten and sold by Jackson National, between January 1, 1981 and December 31, 1995, upon Jackson National's uniform failure to disclose and to properly represent material facts in its sales presentations and policy illustrations relating to the 'vanishing premium' sales scheme." Consolidated Amended Complaint, pp. 5–6. This class is estimated to consist of approximately 300,000 purchasers in the 49 continental states. Plaintiffs seek certification of this class with respect to their claims for fraud, negligent supervision of sales agents, breach of contract, unjust enrichment and violation of Michigan's Pricing and Advertising Act.[2] They seek class certification under Fed. R.Civ.P. 23(b)(2) and (3).

## II. RULE 23 STANDARDS

■ The Court has broad discretion in deciding whether to certify a class, but must conduct a "rigorous analysis" to ensure the prerequisites of Rule 23 are met. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1078–79 (6th Cir.1996). "Maintainability may be determined by the Court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide." *Id.*, at 1079, quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir.1974). See also *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996) (going beyond pleadings may be necessary to enable understanding of precise nature of claims in context of certification issues); *Chin v. Chrysler Corp.*, 182 F.R.D. 448 (D.N.J.) (accord). The party seeking class certification bears the

---

Consumer Fraud and Deceptive Practices Act, has not been incorporated into plaintiffs' consolidated complaint and is not implicated by the present motion for class certification.

**2.** Plaintiffs do not seek class certification with respect to their claims for breach of fiduciary duty and negligent misrepresentation.

burden of proof. *American Medical Systems,* 75 F.3d at 1079.

Subsection (a) of Rule 23 sets forth four threshold requirements that must all be met before a class can be certified:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If each of these prerequisites is satisfied, the movant must also show that the action falls within one of the categories listed in Rule 23(b), of which subsections (2) and (3) are here at issue:

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy....

The Court now considers these requirements in order.

### A. Rule 23(a)

Although Jackson National vigorously opposes the motion for class certification, it has not contested plaintiffs' showing that the threshold prerequisites of Rule 23(a) are satisfied. Indeed, there is no question; the numerosity, commonality, typicality and representational adequacy requirements of Rule 23(a) are all clearly met.

### B. Rule 23(b)(2)

Plaintiffs contend class certification is appropriate under Rule 23(b)(2) because the consolidated complaint includes a prayer for injunctive relief applicable to the entire class. See *Fuller v. Fruehauf Trailer Corp.,* 168 F.R.D. 588, 602 (E.D.Mich.1996) (Rule 23(b)(2) satisfied if opposing party's conduct is generally applicable to the class and final injunctive relief is requested for the class). Jackson National argues the requested injunctive relief is merely incidental to plaintiffs' predominant objective, monetary relief.

It is well-settled that Rule 23(b)(2) certification is not appropriate where, notwithstanding a request for injunctive relief, the predominant relief requested is monetary. *Boughton v. Cotter Corp.,* 65 F.3d 823, 827 (10th Cir.1995); *Nelsen v. King County,* 895 F.2d 1248, 1254–55 (9th Cir.1990); *Arch v. American Tobacco Co.,* 175 F.R.D. 469, 481–82 (E.D.Pa.1997); *Heartland Communications, Inc. v. Sprint Corp.,* 161 F.R.D. 111, 117 (D.Kan.1995). These authorities are not at odds with *Fuller,* which also recognizes that the Rule 23(b)(2) determination is dependent on the nature of the primary relief sought. 168 F.R.D. at 603.

█ The Court has carefully considered plaintiffs' consolidated complaint. It is clear their request for injunctive relief is merely incidental to their prayer for compensatory and punitive damages. Relevantly, plaintiffs pray, not for an order requiring Jackson National to provide life insurance to plaintiffs in conformance with the alleged sales representations, but for an order requiring payment of the costs of providing conforming life insurance. Similarly, their requests for an order requiring disgorgement of ill-gotten gains and/or imposing a constructive trust, and for an order requiring establishment of a claims resolution facility, both serve the ultimate goal of monetary restitution. The requested injunctive relief is thus designed primarily to facilitate and ensure the satisfaction of any monetary relief the Court might award. Because the relief requested is predominantly monetary, class certification under Rule 23(b)(2) is inappropriate.

### C. Rule 23(b)(3) Predominance

█ Rule 23(b)(3) class certification requires first that "questions of law or fact

common to the members of the class predominate over any questions affecting only individual members." This predominance inquiry is "far more demanding" than Rule 23(a)'s commonality requirement and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2249–50, 138 L.Ed.2d 689 (1997). No precise test governs the predominance determination. 5 Moore's Federal Practice, 3rd ed., § 23.46[1]. Rather, the Court must make "a pragmatic assessment of the entire action." *Id.*

In making this assessment, the Court is urged by plaintiffs to focus on the common course of Jackson National's misconduct said to be relevant to all of the putative class members' claims. Specifically, plaintiffs assert as their "core theory" that Jackson National's vanishing premium illustrations which were centrally prepared by staff in the home office, and then distributed nationwide to independent brokers and used by them to provide projections to prospective consumers as to when their policy values might be sufficient to pay the costs of future premiums, were premised on unsupported and unsustainable interest crediting rate assumptions. Proof of this common course of misconduct, plaintiffs contend, is integral to the question of Jackson National's "general liability" on each of the putative class claims and will predominate over individual questions relating to specific liability and damages.

■ The accuracy and sustainability of written policy illustrations relating to the vanishing premium scheme undeniably represent questions of fact common to the claims of all putative class members. They can hardly be deemed to predominate over other fact issues, however. Jackson National has demonstrated there are numerous other fact issues of equal significance to the ultimate determination of its liability.

It is acknowledged by plaintiffs that Jackson National did not generally communicate directly with prospective consumers or policyholders. Communications were made primarily by independent insurance brokers; brokers who were not subject to and did not follow uniform policies regarding distribution of policy illustrations. Some shared available illustrations with consumers, some did not. Moreover, the illustrations available for use by brokers varied in their descriptions of the vanishing premium feature from time to time during the 15–year proposed class period.

Neither were brokers required to follow uniform sales scripts. Jackson National has adequately demonstrated that this freedom led to great variance in representations made by brokers; some explaining away and others even exacerbating any misleading tendencies the policy illustrations may have had.

Thus, determination of whether and which illustrations were given to class members, and of the nature of oral representations made to them at the point of sale, elements of obvious and undeniable importance to all of plaintiffs' claims, are matters requiring individualized fact development. This militates against a finding that the common questions of fact posed even by plaintiffs' narrowed core theory predominate. See *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1006 (11th Cir.1997) (common course of misconduct by defendant did not predominate where plaintiffs' claims ultimately depended on resolution of case-specific factual issues). *Cf. In re The Prudential Ins. Co. of America,* 962 F.Supp. 450, 513–15 (D.N.J.1997), *aff'd,* 148 F.3d 283, 315 (3rd Cir.1998) (role of oral misrepresentations in effecting common scheme of deception in vanishing premium case did not defeat predominance of common issues where evidence showed oral misrepresentations made by agents throughout the country were "virtually identical" because agents were trained uniformly and required to use uniform sales materials.)

Other fact issues requiring individualized treatment are the materiality of the allegedly misleading illustrations and plaintiffs' reliance on them. Inasmuch as the allegedly misleading information contained in the illustrations was generally conveyed to consumers, if at all, by independent brokers in conjunction with varying oral representations, the question whether a plaintiff even relied upon the illustrations, integral to both the tort and contract claims, must be answered to determine Jackson National's liability.

In *Prudential, supra,* a facially similar vanishing premium case in which a nationwide settlement-only class was certified, reliance was held to be an issue with respect to only "a small portion" of plaintiffs' claims; an issue that did not undermine predominance because reliance could be presumed. 962 F.Supp. at 516. Here, in contrast, the Court finds reliance is an element essential not only to plaintiffs' fraud claim, but also to the breach of contract and constructive trust claims.

There is no dispute that a showing of reliance is critical to plaintiffs' common law fraud claim. Further, it appears from plaintiffs' own survey of state laws on unjust enrichment and constructive trust relief that a showing of fraud or other inequitable conduct is universally prerequisite to the imposition of a constructive trust. Inasmuch as Jackson National's alleged fraud is the inequitable conduct at issue in this case, and a showing of reliance is essential to establishment of fraud, it is fair to say that a showing of reliance is prerequisite to relief in the form of a constructive trust as well.

A showing of plaintiffs' reliance upon oral representations is also integral to recovery on their breach of contract claim. This is so because plaintiffs are not seeking merely to enforce the clear and unambiguous terms of their written life insurance policies. Their breach of contract claim depends on the theory that the insurance contracts consist not only of the terms contained in the policies, but also on oral representations. Inasmuch as the insurance policies purport to be integrated contracts, plaintiffs, to avoid the parol evidence rule, must demonstrate that extrinsic evidence of the brokers' representations is admissible as evidence of fraud in the inducement. Again, because materiality and reliance are integral to this showing of fraud, a showing of plaintiffs' reliance is essential also to their breach of contract claim.

Thus, unless plaintiffs demonstrate that the allegedly misleading illustrations, communicated to them, if at all, through oral representations, were material and/or that they relied on them, they will not be entitled to recovery under any of these three theories, which comprise more than half of the claims subject to the class certification motion.

■ Moreover, reliance cannot be presumed under the facts of this case. The *Prudential* presumption was premised on the existence of uniform and material misrepresentations. *Id.* Where, as here, the information contained in the illustrations was shared with consumers, if at all, in the context of varying oral representations, presumption of reliance is inappropriate. See *Castano,* 84 F.3d at 745 (fraud class action cannot be certified when individual reliance will be an issue); *In re Ford Motor Co. Vehicle Paint Litigation,* 182 F.R.D. 214, 221–22 (E.D.La.) (vast majority of states have never adopted rule allowing presumption of reliance in common law fraud cases).

■ Jackson National further contends that variations in the state laws governing plaintiffs' claims will necessitate individualized treatment, undermining predominance. In the Court's earlier choice-of-law ruling (docket # 36, September 30, 1997), it was held that each plaintiff's claim will be governed by the law of the state of his or her residence, i.e., the state where the complained of misrepresentations were communicated. Appropriately assuming that all of the putative class members' claims would therefore be governed variously by the respective laws of the 49 states in which life insurance purchases were made, Jackson National contends variations among the state laws governing plaintiffs' four common law class claims will implicate a myriad of individualized issues of law and fact. Jackson National has highlighted numerous significant variations relating, *inter alia,* to application of the various statutes of limitations, the parameters of responsibilities emanating from the broker-insurer relationship, burden of proof standards, substantive essential elements, and application of the parol evidence rule.

■ In addressing the certification question, the Court is required to determine whether variations in state law defeat predominance. *American Medical Systems,* 75 F.3d at 1085; *Castano,* 84 F.3d at 750; *Chin,* 182 F.R.D. at 458. Plaintiffs have the bur-

den of establishing that variations do not "swamp any common issues." *Castano,* at 741; *Ford Vehicle Paint,* 182 F.R.D. at 222; *In re Ford Motor Co. Ignition Switch Products,* 174 F.R.D. 332, 349 (D.N.J.1997).

■ Rather than contest Jackson National's state law variations argument, plaintiffs attempt to sidestep it. They ask the Court simply to apply Michigan law, the law of the forum state, uniformly to all claims. Plaintiffs have failed to persuade the Court to reconsider its choice-of-law ruling, in which the interests of plaintiffs' states of residence were held to outweigh the interests of the State of Michigan. Indeed, the choice-of-law analysis is a matter of due process and is not to be altered in a nationwide class action simply because it may otherwise result in procedural and management difficulties. See *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821–22, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 627 (3rd Cir.1996), *aff'd sub nom, Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Chin,* 182 F.R.D. at 457. Accordingly, the Court finds that the state law variations identified by Jackson National represent legitimate and unavoidable considerations which substantially compound the proliferation of disparate factual and legal issues. These state law variations seriously undermine plaintiffs' predominance showing.

In conclusion, the Court finds plaintiffs have fallen short of carrying their burden of demonstrating that common questions of law or fact predominate over those which require individualized inquiry.

### D. Rule 23(b)(3) Superiority

An additional prerequisite to certification under Rule 23(b)(3) is the finding "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The Court is thus required "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Georgine,* 83 F.3d at 632.

■ The numerous state law variations implicated by certification of a nationwide class also militate against a finding that a class action is the superior method for adjudication of the controversy. See *Castano,* 84 F.3d at 745, n. 19 ("the greater the number of individual issues, the less likely superiority can be established.") The existence of state law variations is not alone sufficient to preclude class certification. *Chin,* 182 F.R.D. at 457. Yet, the Sixth Circuit has observed that "[i]f more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action." *American Medical Systems,* 75 F.3d at 1085. Plaintiffs bear the burden of providing an extensive analysis of state law variations to determine whether there are insuperable obstacles to class certification. *Chin,* at 457.

■ Again, plaintiffs have failed to carry their burden. Plaintiffs have provided a chart detailing commonalities in the elements of the asserted claims among the laws of the 50 states, but they have not directly responded to the difficulties posed by the variations identified by Jackson National. Although they have provided copies of jury instructions and verdict forms proposed for use in several other class actions, they have failed to show that the disparate legal and factual issues posed by this case are manageable in trial.

■ Plaintiffs assure the Court that their attorneys are experienced in complex litigation and trial of this nationwide class action is manageable through use of restrictions on discovery and presentation of evidence, and through use of tailored jury instructions, interrogatories to the jury and special verdict forms. The Court does not question counsel's competence, but their assurances of manageability do not suffice. See *Castano,* 84 F.3d at 742 ("A court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome."); *Andrews v. American Telephone & Telegraph Co.,* 95 F.3d 1014, 1023 (11th Cir.1996)(accord); *Ford Ignition Switch,* 174 F.R.D. at 349 ("Despite plaintiffs' burden to

provide an 'extensive analysis' of state law variations, they have not explained how their multiple causes of action could be presented to a jury for resolution in a way that fairly represents the law of the 50 states while not overwhelming jurors with hundreds of interrogatories and a verdict form as large as an almanac.")

Plaintiffs' reliance on the *Prudential* certification of a nationwide class in a vanishing premium case is similarly unavailing. *Prudential* is distinguishable not only factually—by virtue of the uniformity of alleged misrepresentations, which simplified fact issues (see *supra*, pp. 221–222), but also procedurally, inasmuch as the *Prudential* class was certified for settlement purposes only. The Third Circuit observed in affirming the *Prudential* class certification that when a district court is confronted with a request for settlement-only class certification, it "need not inquire whether the case, if tried, would present intractable management problems. . . . for the proposal is that there be no trial." 148 F.3d at 316, n. 57, quoting *Amchem*, 117 S.Ct. at 2248. See also *Chin*, 182 F.R.D. at 458; *Ford Vehicle Paint*, 182 F.R.D. at 225–26; *Ford Ignition Switch*, 174 F.R.D. at 350. Here in contrast, plaintiffs seek nationwide class certification of multiple state law claims of some 300,000 class members involving various factual premises *for trial*. Manageability is therefore a very real concern.[3]

Plaintiffs also ask the Court to consider certifying a nationwide class with respect at least to the statutory fraud and contract claims, premised on Jackson National's common course of misconduct. These claims involve less substantial state law variations. Additionally, focusing the factual inquiry on the accuracy and substantiability of illustration projections is a seductively simpler, more manageable task. Yet, its promise is illusory. Because the information contained in the illustrations was generally communicated to consumers, if at all, through vary-

ing oral representations, adjudication of the claims will still unavoidably require individualized treatment. Thus, "as a practical matter, the resolution of this overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Andrews*, 95 F.3d at 1023. The Court, therefore, remains unpersuaded that the efficiencies offered by the class action method would ultimately be realized because plaintiffs' success, even with respect to these three claims, would ultimately be dependent on the resolution of case-specific factual issues. See *Jackson*, 130 F.3d at 1006.

### E.  Rule 23(c)(4)(A)

■ Alternatively, plaintiffs invoke Rule 23(c)(4)(A), and ask the Court to certify a nationwide class exclusively for the purpose of addressing their core theory. Plaintiffs contend the common question of Jackson National's misconduct in preparing and disseminating misleading policy illustrations is suitable for separate resolution on a class-wide basis.

"Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996). The Fifth Circuit, however, has recently cautioned against the "nimble use" of Rule 23(c)(4)(A) to manufacture predominance:

> The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole; must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial. . . . Reading Rule 23(c)(4) as allowing a court to sever issues

---

**3.** In the wake of the Supreme Court's ruling in *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998), holding that a multidistrict litigation transferee court has no authority to retain transferred cases for trial, it is uncertain where trial

would be conducted if the nationwide class were certified. Nonetheless, proof of the manageability of a class action trial is of critical importance to plaintiffs' present motion and is properly addressed by this Court at this stage.

until the remaining common issue predominates over the remaining individual issues would eviscerate the predominance requirement of Rule 23(b)(3); the result would be automatic certification in every case where there is a common issue, a result that could not have been intended.

*Castano,* 84 F.3d at 745, n. 21 (citations omitted). If this insightful caution is followed, then it is clear that certification of the question of Jackson National's common course of misconduct is inappropriate, for the cause of action as a whole certainly does not satisfy the predominance requirement of Rule 23(b)(3).

Moreover, Jackson National asserts that its rights under the Seventh Amendment would be violated by this proposed alternative. The Fifth Circuit has observed:

> The Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits one jury from re-examining those facts and issues. Thus, the Constitution allows bifurcation of issues that are so separable that the second jury will not be called upon to reconsider findings of fact by the first. . . .

*Id.* at 750 (footnote omitted).

Determination of the accuracy and sustainability of illustration projections is one step in the process of adjudicating Jackson National's liability to plaintiffs on any of several theories. But even a jury determination favorable to plaintiffs at this step would not in itself justify a finding of liability on any claim. A second jury would still be required to determine Jackson National's ultimate liability based on evaluation of the earlier jury's determination in conjunction with other more individualized facts and issues. In such a situation, the second jury could find itself impermissibly reconsidering the findings of the first jury. This risk cannot be justified in this case, especially considering that class treatment of this core theory issue alone would offer few benefits of economy. See *id.* at 751.

### III. CONCLUSION

The Court has carefully considered plaintiffs' motion for class certification and found it wanting. Notwithstanding their satisfaction of the requirements of Rule 23(a), plaintiffs have failed to demonstrate that nationwide class certification is appropriate under Rule 23(b)(2) by showing that the relief sought is primarily declaratory and injunctive, rather than monetary. They have also failed to show that common questions of law and fact predominate over the myriad individual issues which their claims implicate. For these reasons, it is apparent that nationwide class action treatment is not superior to other available methods for the fair and efficient adjudication of the controversy.

Accordingly, the Court hereby **DENIES** the motion for nationwide class certification.

**IT IS SO ORDERED.**