DECISION
Before the Court is plaintiffs', Ann and Arthur Zarrella ("plaintiffs"), motion for class certification. Jurisdiction is pursuant to Rule 23 of the Rhode Island Superior Court Rules of Civil Procedure.
 Facts/Travel
Plaintiff, Ann Zarrella ("Mrs. Zarrella"), was an owner of two Adjustable Life III Policies ("AL III"), numbers 16699310 and 18706930, issued by Minnesota Mutual ("defendant" or "company").See Third Amended Complaint at 2. Plaintiff, Arthur Zarrella ("Mr. Zarrella"), was the named insured on policy number 16699310, while Mrs. Zarrella was the named insured on policy number 18706930. Id. at 3. Mrs. Zarrella purchased the two AL III policies from the defendant through Robert Veasey, an independent insurance agent authorized to sell defendant's policies.
Defendant is a corporation maintaining its principal place of business in Minnesota. See Third Amended Complaint at 4. Defendant is licensed to conduct business in all states except in New York. See Affidavit of Craig B. McCloud ("McCloud Affidavit) at 3. Defendant markets adjustable life policies to individuals nationwide. See Third Amended Complaint at 9. The company markets adjustable life policies to the public as an investment and savings mechanism. Id. at 10. During the class period, defendant sold approximately 180,000 AL III policies. See McCloud Affidavit at para. 5.[1]
In the standardized policy form, in consideration for premium payment, defendant agrees to insure the insured's life and establish a cash surrender value for the policy. See Third Amended Complaint at 13. As suggested by its name, the AL III provides policyholders with the chance to increase or decrease the death benefit amount and to change the amount of the premium that goes to accumulation of dollars. See Plaintiff's Exhibits 3 4. Under the policy terms, a policyholder may obtain cash by surrendering the policy, at any time, either in full or in part.See Third Amended Complaint at 13. Also, in accordance with the policy, defendant promises to provide, to the policyholder at any given time, information which is related to the policy's cash value. Id.
In 1994, the Zarrellas requested, from defendant, an in-force illustration of the cash value of their policy. See Third Amended Complaint at 16. In October of 1994, defendant provided an illustration of policy values for the policy insuring Mr. Zarrella. Id.; see also, Plaintiff's Exhibit 7. The illustration showed that on December 10, 1994, the policy would have a cash value of $17,293. Id. The illustration further provided that on December 10, 1995, the policy anniversary date, the policy would have a cash value of $20,486. Id. In August of 1995, the Zarellas transferred ownership of the policy to Southland Life by using a tax free exchange.[2] See Affidavit of Ann Zarrella at 6. The cash value of the policy on the surrender date was $16,993. See
Plaintiff's Exhibit 24.
On or about May 24, 1996, plaintiffs brought an action in this Court on behalf of themselves and on behalf of a class of similarly situated persons. In their third amended complaint, plaintiffs assert claims including fraudulent misrepresentation, breach of contract, bad faith, negligent misrepresentation, the Rhode Island Racketeer Influenced and Corrupt Organizations Act, and R.I.G.L. § 9-1-2 and equitable estoppel. In essence, plaintiffs contend that the defendant has engaged in uniform fraudulent and deceptive conduct by failing to inform its policyholders of the reduction in the cash surrender value of their policies if their policies are surrendered between policy anniversaries, instead of on the policy anniversary date. See
Plaintiffs' Memorandum of Law In Support of Their Motion For Certification of Class Action at 3.
Plaintiffs are now properly before this Court. In the instant matter, plaintiffs request that this court certify a class comprised of themselves and all persons who purchased an AL III Insurance Policy, from the defendant between 1984 and 1997, and who surrendered their policy prior to the policy anniversary date, excluding persons who purchased such policies pursuant to a plan covered by the Employee Retirment Income Security Act of 1974 ("ERISA")[3] Plaintiffs assert that they have made a prima facie case for class certification. Defendant disagrees with plaintiffs position, arguing, inter alia that (1) plaintiffs have failed to seek class certification as soon as practicable; (2) plaintiffs fail the predominance test of Rule 23 (b)(3); and (3) plaintiffs fail the superiority test of Rule 23 (b)(3).
 I. Overview of Rule 23 Class Actions
Rule 23 of the Rhode Island Superior Court Rules of Civil Procedure discusses class actions. Rule 23 (c)(1) provides: "as soon as practical after the commencement of an action brought as a class action, the court shall determine by order whether it is to be maintained." R.I. Sup. R. Civ. Pro. 23 (c)(1). To certify a proposed class, the plaintiffs must demonstrate that they have satisfied the four prerequisites elements outlined in Rule 23 (a). As specifically stated in the text of Rule 23 (a):
 "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." R.I. Sup. R. Civ. Pro. 23 (a); See also Cohen v. Harrington, 722 A.2d 1191, 1195-96 (R.I. 1999.)
Once the requirements of Rule 23 (a) are satisfied, the prospective class must then fit into one of the categories provided for in Rule 23 (b).[4] Pertinent to the matter before this Court, is the language contained in subsection Rule 23 (b)(3). An action is maintainable under 23 (b)(3) when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a classification." R.I. Super. R Civ. P. 23 (b).
"The party pleading class action bears the burden of proof.Cabana v. Littler, 612 A.2d 678, 685 (R.I. 1992). The Rhode Island Supreme Court has described this burden of proof as "light." Id.[5]
In ruling on a motion for class certification, a court should not decide the merits of the case. Eisen v. Carlisle Jacquelin,417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). A court may, however, look past the pleadings in determining whether the requirements of Rule 23 have been satisfied. Castanov. American Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996). As stated in Mulligan v. Choice Mortgage Corp. USA, No. CIV. 96-596-B, 1998 WL 544431, at 2 (D.N.H. Aug. 11, 1998), "a motion to certify `generally involves considerations . . . enmeshed in the factual and legal issues comprising [a] plaintiff's cause of action.'" Id. (quoting Coopers Lybrand v. Livesay, 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (citation omitted)). "This is particularly true with respect to questions of predominance and superiority which necessitate a `close look' at, inter alia, the `difficulties likely to be encountered in the management of a class action.'" Id. (quotingAmchem Prod., Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997); Manual for Complex Litigation § 30.11 (3d ed. 1995)).
 II. As Soon As Practical
Plaintiffs argue that they have filed their motion for class certification "as soon as practicable" in compliance with Rule 23 (c)(1). Alternatively, defendants contend that plaintiffs have failed to file their certification motion in a timely manner.
Rule 23 (c)(1) provides:
 "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."
In Cabana, the Rhode Island Supreme Court discussed the class proponent's responsibility in moving to certify a suit as a class action:
 "Rule 23 requires the class proponent to make a timely motion to certify the suit as a class action and to present evidence from which the court can conclude that class-certification requirements are met. (citation omitted) . . . The rule does not state when this burden must be met, but the Federal Rule 23 (c)(1) codifies the majority view that certification should be determined as soon as practical." Id. at 686.
The Cabana court held that plaintiffs had not satisfied their burden, to certify their class "as soon as practicable," as they failed to satisfy certification requirements during a time period which exceeded eight-and-one-half years. Id.
Courts have taken divergent approaches in describing the meaning of the "as soon as practicable requirement." 5 Moore'sFederal Practice, § 23.61 [4], at 23-278.1 (3d ed.1997). As discussed by the Federal District Court for the District of Rhode Island, "The current practice is to determine maintainability of the class and to identify and structure the class at the earliest pragmatically wise moment." Berman v. Narragansett RacingAssociation, 48 F.R.D. 333, 336 (D.R.I. 1969). As a general rule, there is no specific deadline by which a court must act. SeeMontelongo v. Meese, 803 F.2d 1341, 1351 (5th Cir. 1986), cert.denied, 481 U.S. 1048 (1987) (district court did not abuse its discretion in granting certification three years after suit was instituted where delays were caused by plaintiff's post-filing discovery efforts, docket backlog and where defendants were not prejudiced by the delay); Polich v. Burlington Northern, Inc., 116 F.R.D. 258 (D. Mont. 1987) (motion for class certification was timely filed, notwithstanding the fact that action was filed about one year prior to motion for class certification, when proposed class representatives had difficulties in obtaining responses to discovery); See also 2, Herbert Newburg Alba Conte, Newburg on Class Actions § 7.14, at 7-47 (3d ed. 1992) ("When the cases are examined, one finds that each suit has its own case history and surrounding circumstances that affect the practicalities of reaching an initial class determination. Accordingly, initial class rulings have been made as early as a few months following the filing of the complaint and as late as several years thereafter.") Some courts have declined to rule on motions for class certification until parties have had an opportunity to conduct discovery. See Brown v. J. P. Allen Co., 79 F.R.D. 32, 35 (N.D. Ga. 1978); Chateau de Ville Prod. v.Tams-Witmark Music, 586 F.2d 962, 966 (2d Cir. 1978); See alsoMontelongo, 803 F.2d at 1351.
Upon reviewing the history and circumstances surrounding this case, this Court concludes that plaintiffs have complied with the "as soon as practicable requirement" of Rule 23 (c)(1). After this case was originally filed in 1996, defendants filed two motions to dismiss. These motions were not resolved until January of 1997. Also, in September of 1997, defendant removed this case to the United States District Court for the district of Rhode Island. On or about November 20, 1997, Magistrate Judge Lovegreen held a hearing and remanded the case back to the Rhode Island Superior Court. Although an order remanding the case was entered on November 24, 1997, See Order dated November 24, 1997, Lovegreen, J., this case was not remanded to the Superior Court until January 5, 1998. Id. Furthermore, this Court notes that on or about April 2, 1998, a hearing was held on inter alia
plaintiffs' motion to compel documents. See Order dated April 24, 1998, Thompson, J. Judge Thompson granted plaintiffs' motion and ordered that the requested documents be produced within 90 days.Id. at 2. Plaintiffs were ordered to file a motion to certify the class "within 45 days of defendants production of said documents." Id. There is no argument that plaintiffs were still obtaining discovery materials from the defendant at least until July 31, 1998. See Defendant's' Memorandum dated November 4, 1998 at 26-27. Thereafter, plaintiffs made their motion for class certification on or about August 17, 1998.
 III. Rule 23 (b) Predominance[6]
Plaintiffs argue that they have satisfied the predominance element of Rule 23 (b) as questions of law or fact, common to the class members, predominate over the individual members questions; that being, a common course of fraudulent and deceptive conduct. Plaintiffs contend that defendant has accomplished its practice of uniform deceptive conduct through the use of standardized practices which include "omission[s] of material information from its policies, marketing materials, in-force illustrations, . . . conservation materials, and [the] failure to train or require its agents to disclose material information." See Plaintiffs' Memorandum dated August 17, 1998 at 49. Plaintiffs argue that the focus of a trial in this case would be on the conduct of the defendant's management and whether management implemented deceptive practices by and through its standardized practices. Defendants disagree with plaintiffs' position arguing that the predominance element has not been satisfied. Specifically, defendants argue that predominance is undermined by individual oral representations, individual issues of reliance, and differences in state laws.
The predominance element of Rule 23 (b) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members. . . ." In Amchem Products, the United States Supreme Court described the predominance inquiry as being "far more demanding" than Rule 23 (a)'s commonality requirement. AmchemProducts, 117 S.Ct. at 2250. "The Rule 23 (b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Id. at 2249. The predominance requirement is "readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." Id. at 2250.
Although there is no precise test which governs the predominance inquiry, See 5 Moore's § 23.46[1], at 23-206, the United States Supreme Court has noted that the predominance element is not satisfied when there exists a greater number of questions which are peculiar to several categories of class members, and to individuals within each category, where these uncommon questions are significant. Amchem Products, 117 S.Ct. at 2250. In Amchem, the Supreme Court affirmed the decision of the Third Circuit decertifying a massive asbestos litigation class. The Court found that any commonality which was shared by the class members was weakened by class disparities. Id.:
 "'Class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods. Some class members suffer no physical injury or have only asymptotic pleural changes, while others suffer from lung cancer, disabling asbestosis, or from mesothelioma. . . . Each has a different history of cigarette smoking, a factor that complicates the causation inquiry.'" Id. (quoting Georgine v. Amchem Products, Inc., 83 F.3d 610, 626 (3rd Cir. 1996).
Courts have found the predominance inquiry satisfied when it is alleged that the defendant has engaged in a common course of conduct. See Seidman v. American Mobile Sys., Inc., 157 F.R.D. 354, 366 (E.D. Pa. 1994) (allegations of a single, on-going course of fraudulent behavior whereby corporation, CEO and accountant failed to disclose CEO's unauthorized transfer of money was sufficient to satisfy predominance); In Re Data AccessSys. Sec. Litig., 103 F.R.D. 130, 142 (D.N.J. 1984) (predominance requirement satisfied where common question was whether defendants materially misrepresented corporation's financial conditions). That is, even when a common scheme is implemented through oral misrepresentations. See 5 Moore's § 23.47[1] [b], at 23-216 ("However, the existence of oral misrepresentations does not preclude a finding of predominance if plaintiffs also allege a common course of fraudulent conduct through written misrepresentations or fraudulent omissions.") In the context of a class action for insurance litigation, the court in Prudential
found the predominance and commonality requirements satisfied where plaintiff's claims had stemmed from the defendant's alleged common course of conduct; In Re The Prudential Ins. Co. ofAmerica, 962 F. Supp. 450, 511 (D.N.J. 1997), aff'd, 148 F.3d 283
(3rd Cir. 1998) that being, that the defendant had "encouraged or otherwise permitted fraudulent sales practices." Id. In Prudential, the New Jersey Federal District Court for the District of New Jersey found the predominance element was satisfied regardless of the fact that defendants scheme was implemented through oral misrepresentations. The evidence demonstrated that oral misrepresentations were nearly identical throughout the country. Id. at 514. Agents were uniformly trained and were required to use uniform sales materials. Id. at 515. Seealso Duhaime v. John Hancock Mut. Life Ins. Co., 177 F.R.D. 54, 65 (D. Mass. 1997) (common scheme of deception established predominance even through scheme was implemented greatly through oral misrepresentations where plaintiffs alleged they were fraudulently induced pursuant to a common scheme that defendants developed and carried out through their nationwide training program, deceptive sales materials and policy illustrations).
Alternatively, courts have failed to find predominance in cases where class members claims are dependent on non-uniform oral representations. In re Jackson National Life InsuranceCompany Premium Litigation, 183 F.R.D. 217 (W.D. Mich. 1998). Recently in Jackson National, the Federal District Court for the Western District of Michigan declined a request to certify an action under Rule 23 (b)(3). In Jackson National, plaintiffs sought class certification for a nationwide class[7] in an action against their life insurer, Jackson National, Jackson National, 183 F.R.D. at 219. Plaintiffs prayed for inter alia
compensatory and punitive or exemplary damages and injunctive relief. Id. Plaintiffs asserted claims including fraud, negligent supervision of sales agents, unjust enrichment, and breach of contract. Id. Plaintiffs contended that they were induced to buy life insurance policies through "false, incomplete and misleading sales representations and information disseminated by Jackson National." Id. Plaintiffs asserted as their "`core theory' that Jackson National's vanishing premium illustrations which were centrally prepared by staff in the home office, and then distributed nationwide to independent brokers and used by them . . ., were premised on unsupported and unsustainable interest crediting rate assumptions." Id. at 221.
In finding plaintiff's predominance inquiry lacking, theJackson National court noted various factual issues which undermined a showing of predominance. These included varying communications which were made by and through independent insurance brokers:
 "It is acknowledged by plaintiffs that Jackson National did not generally communicate directly with prospective consumers or policyholders. Communications were made primarily by independent insurance brokers; brokers who were not subject to and did not follow uniform policies regarding distribution of policy illustrations. Some shared available illustrations with consumers, some did not. Moreover, the illustrations available for use by brokers varied in their descriptions of the vanishing premium feature from time to time during the 15-year proposed class period.
 Neither were brokers required to follow uniform sales scripts. Jackson National has adequately demonstrated that this freedom led to great variance in representations made by brokers; some explaining away and others even exacerbating any misleading tendencies the policy illustrations may have had.
 Thus, determination of whether and which illustrations were given to class members, and of the nature of oral representations made to them at the point of sale, elements of obvious and undeniable importance to all of plaintiffs' claims are matters requiring individualized fact development. This mitigates against a finding that the common questions of fact proposed by plaintiffs narrow core theory predominate." Id. (Citations omitted.)
See also, Peoples v. American Fidelity Life Ins. Co., 176 F.R.D. 637, 645 (N.D. Fla. 1998) (certification denied where plaintiffs recollections of oral representations varied materially from that of alleged canned training presentation); Rothwell v. Chubb LifeInsurance Co. of America, No. 96-83-B (D.N.H. March 31, 1998) (certification denied where there was no evidence that mostly independent agents used standardized sales scripts).
This Court is not persuaded by plaintiff's showing of predominance. Specifically, this Court finds that oral representations of individual agents, which will be placed at issue in this case, are inherently individualized thus undermining predominance. Defendant sells and services its insurance products through the use of a general agency system.See Affidavit of Richard D. Lee at 3. As explained by Mr. Lee, under a general agency system, "agents operate as independent contractors." Id. at 5. During the class period, it is alleged that some 180,000 AL III policies were issued through more than 7,000 agents in the forty-nine states and the District of Columbia. See McCloud Affidavit at 5. Agents do not use canned scripts for the sale or surrender of defendant's policies. See
Affidavit of Thomas Boswell ("Boswell Affidavit") at 4; Affidavit of Thomas Dzik ("Dzik Affidavit") at 8; Affidavit of Donald M. See ("See Affidavit") at 10[8] Defendant has demonstrated to this Court that the lack of scripted presentations has given agents the opportunity to explain consequences of intra-anniversary surrender. See Boswell Affidavit at 11; Affidavit of Alan M. Salowe ("Salowe Affidavit") at 7; Dzik Affidavit at 5; Affidavit of Gary Wolff ("Wolff Affidavit") at 6.
 A. Reliance
Defendants argue that individual reliance issues in this case further undermine predominance. Plaintiffs disagree with defendants position contending (1) that some of their causes of actions have no reliance element; (2) that reliance issues are merely secondary to proving defendants course of conduct; and (3) that in an omissions case, reliance can be presumed.
Some courts have certified class actions notwithstanding individual questions of reliance. See Prudential, 962 F. Supp. at 516.; Holton v. L.F. Rothschild, Unterberf, Towbin, 118 F.R.D. 280, 283 (D. Mass. 1987). Many courts have taken the position that individual issues of reliance will not, alone, serve as a bar to certification when plaintiffs allege a common course of wrongdoing which is based on the same or similar representations and omissions. See Hanrahan v. Britt, 174 F.R.D. 356, 365 (E.D.Pa 1997) ("whether documents and oral statements contained uniform omissions and misrepresentations is the central question which will predominate over issues of individual reliance"); In reBadger Mt. Irr. Dist. Sec. Litig, 143 F.R.D. 693, 697 (W.D. Wash. 1992) (common questions predominate over individual issues of reliance where plaintiffs allege a common course of wrongdoing based on the same misrepresentations); Kirkpatrick v. J.C.Bradford Co., 827 F.2d 718, 722-24 (11th Cir. 1987). cert.denied, 485 U.S. 959 (1988) (individual issues of reliance do not predominate where plaintiffs allege a common course of conduct of misrepresentations through affirmative acts and omissions); Seealso 5 Moore's § 23.47 [1][c], at 23-229. Still, others have held that certification is not appropriate where proof of individualized reliance is at issue. See Jackson National, 183 F.R.D. at 222.; Mulligan, 1998 WL 544431 at *7; Rothwell, Civ. No. 96-83-B * 17 (following majority view that certification is not proper when individual reliance is at issue); Castano, 84 F.3d at 745 ("a fraud class action cannot be certified when individual reliance will be an issue").[9]
Furthermore, although courts have permitted a presumption of reliance, in actions alleging securities fraud, for fraud-based claims cases stemming for misleading omissions, see Prudential, 962 F. Supp. at 516, the vast majority of jurisdictions have not adopted a rule allowing a presumption of reliance in common law fraud actions. See In re Ford Motor Co. Vehicle Paint Litigation,
182 F.R.D 214, 221-22 (E.D. La. 1998) (collecting cases); 5 Moore's § 23.47[2], at 23-234;[10] But see, Cope v.Metropolitan Life Insurance Co., 82 Ohio St.3d 426,696 N.E.2d 1001, 1007-08 (1998).
This court finds that in this case, the presence of individual questions of reliance further undermines predominance. This Court agrees, as did the court in Rothwell, that certification is generally not appropriate when individual reliance is at issue. Plaintiffs claims undoubtedly contain elements of reliance. See e.g., negligent misrepresentation[11], fraudulent misrepresentation, estoppel.[12] These claims are not susceptible to class treatment as individualized determinations would have to be made in order to determine what materials and communications (relating to the terms and operation of the AL III policy) the individual class members received and heard and whether the individual class members reasonably relied on that information (or lack thereof) in making a decision to surrender their policies intra-anniversary. In finding that individual issues of reliance undermine predominance, this Court also notes after its review of pertinent case law, a presumption of reliance is clearly not warranted in the case at bar, involving common law fraud.
 B. State Law Differences
Plaintiffs argue that no significant state law distinctions undermine predominance. Plaintiffs have cited a myriad of cases contending that there are no substantial variations among the states laws on the types of claims which are asserted in the case at bar. Plaintiffs have submitted the affidavit of Professor Samuel Issacharoff[13] and his analysis of law of the fifty states with respect to breach of contract, fraud, negligent misrepresentation, unjust enrichment/constructive trust, negligence, (breach of contract) duty of good faith and fair dealing and punitive damages, and the affidavit of Professor Geoffrey P. Miller.[14] See Plaintiffs' Exhibits 61 62. Defendants contest plaintiffs' position arguing that various differences in the 50 states laws defeat predominance. Defendants have submitted their own analysis of the law in the fifty states with respect to fraud, negligent misrepresentation, breach of duty of good faith and fair dealing, and equitable estoppel. See
Defendant's Exhibits 32, 33, 34, 35. Defendants have also submitted a list of statutes of limitations for the various causes of actions in the fifty states and an affidavit from Professor John B. Corr. See Defendant's Exhibits 8 36.
In addressing a motion for class certification, a court is required to determine whether variations in different state laws defeat predominance. Castano, 84 F.3d at 750. "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance." Id. at 741. "Plaintiffs bear the burden of providing an `extensive analysis' of state law variations to determine whether there are `insurperable obstacles' to class certification." In re Ford Motor Co. Ignition Switch Products, 174 F.R.D. 332, 349 (D.N.J. 1997) (citations omitted). The existence of state law variations alone will not preclude class certification. Id. Certification is appropriate unless the various states laws differ substantially. 5 Moore's § 23.47 [1] [d], at 23-232.
In addition to the problems noted above, this court also finds that certification is also problematic because of the potential for variations in the laws governing the individual class members' claims. On the onset, this Court notes the fact that Rhode Island still utilizes the First Restatement approach to choice of law issues involving contracts. See Union Say. Bankv. DeMarco, 105 R.I. 592, 254 A.2d 81 (1969). In light of this fact, the individual class members contract claims could be governed by the laws of the state in which the contract was completed. Additionally, although plaintiffs have submitted,inter alia Issacharoff's analysis, in an attempt to demonstrate similarities in some of the various states laws,[15] defendants have highlighted various problems with the application of the fifty states law.[16] These problems, including varying statutes of limitations and burdens of proof, represent sound and legitimate considerations which, in this Court's opinion, plaintiffs have not adequately addressed. See Defendant's Exhibit 36; Defendant's Summary of the Argument, Standards of Proof for Common Law Fraud.
 IV. Superiority/Manageability
Plaintiffs argue that a class action is superior to other methods of adjudication. Defendant disagrees with plaintiffs' position arguing that this case fails Rule 23 (b)(3)'s superiority prong.
In addition to satisfying the predominance prong of Rule 23 (b)(3), plaintiff must also demonstrate superiority. The superiority prong requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In order to satisfy superiority, a class action must be the best method of adjudication. 5 Moore's § 23.48[1], at 23-253 ("Under the superiority test of Rule 23 (b)(3), a class action must be better than, not merely as good as, other methods of adjudication"). In analyzing the superiority and predominance, courts are required to examine:
 "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a classification." R.I. Super. R. Civ. P. 23 (b).
Relevant to the matter before this Court are serious problems that exist with manageability.
Of the four 23 (b)(3) factors, manageability is perhaps the most intensely litigated and most often serves as grounds for finding that a class action is not superior. Newburg § 4.32, at 4-125; See also, 5 Moore's § 23.49 [5][a], at 23-267. "Manageability `encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit.'" Prudential, 962 F. Supp. at 524 (quoting Eisen, 94 S.Ct. at 2146.) Some courts are hesitant to deny certification based on manageability concerns. See In re Worker's Compensation,
130 F.R.D. 99, 110 (D. Minn. 1990). Still, others have recognized that the presence of numerous individual determinations may make a trial unmanageable. Feinstein v. Firestone Tire Rubber Co.,535 F. Supp. 595, 608 (S.D.N.Y. 1982) (certifying a class action when individual questions of fact and law predominate would "unleash a Frankenstein monster of unmanageability").
This Court finds that this case presents various manageability concerns, confirming that a class action is not the superior method for adjudication of this law suit. Plaintiffs have failed to demonstrate to this Court how the widely variant legal and factual issues, discussed throughout this decision, would be manageable at a trial. This court has previously noted problems with varying state law and individualized determinations. See Jackson National, 183 F.R.D. at 745 (quotingCastano, 84 F.3d at 745, n.19) ("the greater the number of individual issues, the less likely superiority can be established.") Although plaintiffs have suggested to this Court that their litigation could be managed "through the sensible use of the tools available to manage litigation, including grouping of substantive laws, creation of subclasses, utilizing a manageable cross section of class members, and the drafting of appropriate jury instructions and special verdict forms," See
Plaintiffs Reply Memorandum at 48, they fail to present this court with any sample "tools," including jury instructions or special verdict forms. Plaintiffs have not provided this Court with any means by which to formulate a viable "trial blueprint."Ford Motor Co., 174 F.R.D. at 350.
 Conclusion
In conclusion, in finding plaintiffs have not demonstrated the requisite elements of predominance and superiority, this Court declines to grant plaintiffs motion for class certification. The class action, although a valuable litigation tool, is neither an appropriate nor superior format for the case at bar.
Counsel shall submit an appropriate order for entry in accordance with the decision of this Court.
[1] Defendant first issued the AL III policy in 1984. See
Plaintiff's Exhibit 5, Interrogatory 11.
[2] Defendant has filed a third-party complaint against Joseph Caramadre. See Defendant's Memorandum dated November 4, 1998 at 10-12. Caramadre was a law school classmate of the Zarrellas' son. Caramadre, a financial planner, acted as the Zarellas' financial advisor during the time plaintiffs transferred their AL III policy into a Southland Life policy via tax free exchange.
[3] In September of 1997, defendant removed this case to the United States District Court for the district of Rhode Island. Defendant contended that based on information learned during the August 5, 1997 deposition of Mrs. Zarrella, removal was appropriate on the ground that certain ERISA questions were raised therefore giving the Federal Court subject matter jurisdiction. See Defendant's Exhibit 10, Transcript of Hearing before Magistrate Robert W. Lovegreen, at 19. On or about November 20, 1997, Magistrate Lovegreen held a hearing and remanded the case back to the Rhode Island Superior Court. Id. at 21.
[4] Rule 23 (b) is discussed in more detail in section III of this decision.
[5] Rule 23 of the Superior Court Rules of Civil Procedure is identical to Rule 23 of the Federal Rules of Civil Procedure.Cabana, 612 A.2d at 687, fn. 1. As such, due to the dearth of case law in this state on Rule 23, this Court looks to interpretations of Federal Rule 23. See Ciunci v. Logan,652 A.2d 961, 962 (R.I. 1995).
[6] Because this Court concludes that plaintiffs cannot satisfy the requirements of Rule 23 (b)(3), this Court need not examine plaintiffs' arguments under Rule 23 (a).
[7] In Jackson National, plaintiffs' proposed class consisted of "`all persons who purchased whole life, or other types of permanent life insurance policies solicited, underwritten and sold by Jackson National, between January 1, 1981 and December 31, 1995, upon Jackson National's uniform failure to disclose and to properly represent material facts in its sales presentations and policy illustrations relating to the `vanishing premium' sales scheme.'" Id. at 219.
[8] It appears that plaintiffs generally agree with the proposition that defendant's sales agents are not provided with any scripts for the surrender of its policies. In their memorandum, plaintiffs state: "Minnesota Mutual does not have any established procedure, written or otherwise, for agents to follow in attempting to conserve a policy that the policyholder is surrendering. See Plaintiffs' Memorandum at page 21.
[9] Worth mentioning is the language contained in the Rules Advisory Committees Notes appended to the 1966 Amendment of Federal Rule 23 referring to subdivision (b)(3). Those notes state:
 "The court is required to find, as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the questions affecting individual members. It is only where this predominance exists that economies can be achieved by means of the class-action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed."
[10] The elements of common law fraud in Rhode Island are "(1) a false or misleading statement of material fact (2) known by the defendant to be false and (3) made with intent to deceive, (4) upon which the plaintiff relies to its detriment." NationalCredit Union Admin. Bd. v. Regine, 795 F. Supp. 59, 70 (D.R.I. 1992) (citations omitted).
[11] In Mallette v. Children's Friend Service, 661 A.2d 67
(R.I. 1995), the Rhode Island Supreme Court noted the elements of negligent misrepresentation:
"We note that in order to establish a prima facie case of negligent misrepresentation, the plaintiff must establish the following elements:
 `(1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation.'" Id. at 69 (citations omitted)
[12] As defined by our state Supreme Court,
 "the indispensable elements of equitable estoppel, or estoppel in pais, are: `first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct did induce the other to act or fail to act to his injury.'" Providence Teachers Union v. School Bd., 689 A.2d 388 (R.I. 1997) (quoting Lichtenstein v. Parness, 81 R.I. 135, 138, 99 A.2d 3, 5 (1953)).
"The key element of an estoppel is intentionally induced prejudicial reliance." E. Greenwich Yacht Club v. Coastal Res.Mgt. Council, 118 R.I. 559, 568, 376 A.2d 682 (R.I. 1977) (citingRaymond v. B.I.F. Industries Inc., 112 R.I. 192, 198-99,308 A.2d 820, 823 (1973)).
[13] The Issacharoff affidavit that plaintiff's have submitted was not specifically created for the matter before the court. Rather, the affidavit submitted was prepared for the Massachusetts case of Duhaime et al. v. John Hancock Mutual LifeInsurance Co., C.A. No. 96-10706-GAO.
[14] Professor Miller's affidavit was prepared for the matter before the court.
[15] Plaintiffs have submitted no detailed analysis discussing the law of estoppel.
[16] See Castano, 84 F.3d at 743, n.15 (noting differences in the law of fraud).